RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM, JPF@LNBYG.COM,

Attorneys for Plaintiff
Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HOLOGENIX, LLC,<br><br>           Debtor and Debtor in Possession. | ) Case No.: 2:20-bk-13849-BR<br>)<br>) Chapter 11 Case<br>) Subchapter V<br>)<br>) Adversary Case No. 2:22-ap-01098-BR<br>) |
| HOLOGENIX, LLC,<br><br>           Plaintiff,<br>v.<br><br>MULTIPLE ENERGY TECHNOLOGIES, LLC,<br><br>           Defendant. | ) **DEBTOR'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT AFTER REMAND FROM THE DISTRICT COURT**<br>)<br>) <u>Hearing:</u><br>) Date:  May 26, 2026<br>) Time:  10:00 a.m.<br>) Place:  Courtroom 1668<br>)        255 East Temple Street<br>)        Los Angeles, CA 90012<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ...................................................... 2

II.     PROCEDURAL APPELLATE BACKGROUND ............................. 4

III.    FACTUAL BACKGROUND ........................................................ 4

        A.      Hologenix Paid MET $100,000 Pursuant to a Settlement Agreement ............ 4

        B.      MET Then Agreed to Pay $100,000 to Legalist ................ 5

        C.      MET's Claim Against Hologenix in the Amount of $2.4 million .................... 6

        D.      The Adversary Proceeding Complaint, MSJ, and Cross-MSJ .................... 6

        E.      The Two Sullivan Declarations and Exhibits Thereto ................ 7

IV.     DISCUSSION ........................................................ 7

        A.      Ms. Sullivan's Declaration and Exhibits Thereto Support Summary
                Judgment in Favor of Debtor and Against MET ................................ 7

V.      THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR DEBTOR
        AND AGAINST MET ........................................................ 8

        A.      Legal Standard for Summary Judgment ........................... 8

        B.      The Sullivan Declarations and MET's Exhibits Support Summary
                Judgment for Debtor and Against MET ........................... 9

        C.      Ms. Sullivan's Declarations Are Contradicted by MET's Exhibits .............. 11

        D.      MET Was the "Initial Transferee," Not a "Mere Conduit" .................... 15

        E.      MET Was the "Entity for Whose Benefit Such Transfer Was Made" .......... 18

VI.     CONCLUSION ........................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................................8, 9, 14

*Bader v. N. Line Layers, Inc.*,
    503 F.3d 813 (9th Cir. 2007) .....................................................................9, 10, 14

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) .................................................................................16

*Gajiu v. Ehrenberg* (*In re Goldshtadt*),
    2019 WL 4200802 (9th Cir. BAP Sept. 4, 2019)...................................................9

*Hansen v. U.S.*,
    7 F.3d 137 (9th Cir. 1993) .........................................................................9, 10, 14

*Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc.* (*In re Walldesign, Inc.*),
    872 F.3d 954 (9th Cir. 2017) ..........................................................................15, 19

*Lowry v. Sec. Pac. Bus. Credit, Inc.* (*In re Columbia Data Prods., Inc.*),
    892 F.2d 26 (4th Cir. 1989) ..................................................................................19

*Mano-Y & M, Ltd. v. Field* (*In re The Mortg. Store, Inc.*),
    773 F.3d 990 (9th Cir. 2014) ................................................................................17

*Merrill v. Dietz* (*In re Universal Clearing House Co.*),
    62 B.R. 118 (D. Utah 1986) ..................................................................................19

*Scott v. Harris*,
    550 U.S. 372 (2007)......................................................................................9, 13, 15

*Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*,
    322 F.3d 1039 (9th Cir. 2003) ................................................................................9

*U.S. v. 1 Parcel of Real Prop., Lot 4, Block 5 of Eaton Acres*,
    904 F.2d 487 (9th Cir. 1990) ............................................................................9, 10

*Universal Serv. Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors of Incomnet Commc'ns Corp.* (*In re Incomnet, Inc.*),
    463 F.3d 1064 (9th Cir. 2006) ......................................................15, 16, 17, 18

*Zazzali v. Goldsmith* (*In re DBSI Inc.*),
    593 B.R. 795 (Bankr. D. Idaho 2018).............................................................17, 18

**Federal Statutes**

11 U.S.C.
    § 102(5)..................................................................................................................19
    § 550(a) ............................................................................................................17, 18

**Other Authorities**

Fed. R. Bankr. P. 7056.................................................................................................8

Fed. R. Civ. P. 56(a) ....................................................................................................8

Fed. R. Civ. P. 56(b)(4).................................................................................................8

Fed. R. Civ. P. 56(e) .....................................................................................................8

FED.R.EVID. 1002 .......................................................................................................12

FRCP 56.........................................................................................................................8

1    Hologenix, LLC ("Plaintiff" and "Debtor"), the debtor and debtor in possession in the

2    above-captioned bankruptcy case and the plaintiff in the above-captioned adversary

3    proceeding, hereby respectfully submits its brief in support of this Court entering summary

4    judgment against Multiple Energy Technologies, LLC ("Defendant" and "MET") after the

5    District Court's judgment (the "Judgment") [BK ECF 947] and decision (the "Decision") [BK

6    ECF 946] remanding this Court's previously entered Summary Judgment [AP ECF 33]. A

7    general understanding of the adversary proceeding is presumed based on the Court's

8    previously entered findings of fact and conclusions of law and order granting summary

9    judgment (the "Order") [AP ECF 34], which are incorporated here by reference for background

10   **I.      INTRODUCTION AND SUMMARY**[1]

11       The Court should issue summary judgment in favor of Debtor and against MET because

12   the evidence submitted by MET's declarant Nicole Sullivan in her declarations and exhibits

13   attached thereto support entry of summary judgment that MET is liable for a voidable

14   preferential transfer of $100,000.

15       On March 6, 2020, Hologenix and MET entered into a Settlement Agreement.[2]   The

16   Settlement Agreement provided that "Hologenix shall pay MET" $2.5 million.[3]   Pursuant to the

17   Settlement Agreement, on March 9, 2020, Hologenix paid MET $100,000.[4]   The payment was

18   made by wiring the funds to MET's attorney's client trust account.[5]   As a result of the Transfer,

19   the amount owed by Hologenix to MET was reduced from $2.5 million to $2.4 million.[6]   The

20

---

21   [1] Capitalized defined terms used in the Introduction have the same meanings as ascribed to them in the brief below.

22   [2] AP ECF 13 (Hgx MSJ, Arnold Decl.) 132-137.

23   [3] AP ECF 13 (Hgx MSJ, Arnold Decl.) 132 (emphasis added); *see also* AP ECF 13 (Hgx MSJ,
24   Arnold Decl.) 216 (admission by MET that the Settlement Agreement required Hologenix to "make a series of payments to MET totaling $2.5 million.").

25   [4] *See* AP ECF 13 (Hgx MSJ, Arnold Decl.) 216 (admission by MET "that MET received a single payment of $100,000.00 via wire on or about March 9, 2020, pursuant to a certain
26   Settlement Agreement . . ..").   In multiple discovery responses, MET admitted that it received a payment of $100,000 on March 9, 2020.  *See generally* AP ECF 13 (Hgx MSJ, Arnold Decl.) 216-218, 223-224.

27   [5] AP ECF 29 (2nd Sullivan Decl.) 33-35.

28   [6] AP ECF 13 (Hgx MSJ, Arnold Decl.) 163-164.

1    foregoing demonstrates a very simply preference liability against MET as the initial transferee or

2    the party for whose benefit the transfer was made.

3        Faced with certain liability for the $100,000 transfer and no defenses, MET has

4    fabricated baseless defenses of being a "mere conduit" or alleging to have received no benefit at

5    all because it "immediately" transferred the $100,000 to a third-party. In support of this baseless

6    fabrication, MET submitted a declaration stating that the subsequent transfer was "immediate,"

7    but MET's actual documentary evidence shows that MET did not transfer the funds until an

8    entire week later, as detailed below. Thus, MET's defense is baseless, and MET's own evidence

9    supports summary judgment in favor of Debtor and against MET.

10        To wit, on March 12, 2020 – six days *after* entering into the Settlement Agreement and

11    three days *after* receiving the $100,000 – MET entered into an agreement with litigation funder

12    Legalist, Inc. and agreed to pay $100,000 to Legalist.[7] On March 16, 2020 – four days *after*

13    signing the MET-Legalist Agreement, and a full seven days *after* Debtor transferred $100,000 to

14    MET's counsel's trust account – MET's attorney wired $100,000 to Legalist.[8] Hologenix was

15    not a party to the MET-Legalist Agreement,[9] and Debtor knew nothing of the MET-Legalist

16    relationship until MET filed its cross-motion for summary judgment.[10]

17        MET asserts that Hologenix actually transferred $100,000 to Legalist, and that MET was

18    a "mere conduit" through which the funds flowed. The evidence before the Bankruptcy Court –

19    including evidence submitted by MET itself – proves otherwise. No reasonable jury could

20    conclude that MET was not the initial transferee or an entity for whose benefit the transfer was

21    made. Accordingly, the Bankruptcy Court should enter summary judgment in favor of Debtor.

22

23

---

24    [7] AP ECF 29 (2nd Sullivan Decl.) 9.

     [8] AP ECF 29 (2nd Sullivan Decl.) 34, 38; AP ECF 23 (1st Sullivan Decl.) 4.

25    [9] AP ECF 29 (2nd Sullivan Decl.) 9.

26    [10] In its discovery responses, MET did not disclose the existence of any agreement between
     MET and Legalist, did not contend that MET was required by any agreement to transfer
27    $100,000 to Legalist, and did not even mention Legalist's name. MET only said that the
     $100,000 was transferred to an unnamed "third-party transferee." *See, e.g.*, AP ECF 13
28    (Hgx MSJ, Arnold Decl.) 216.

## II.    PROCEDURAL APPELLATE BACKGROUND

The District Court remanded the Order instructing the Bankruptcy Court to consider the declaration and evidence submitted by MET in opposition to Debtor's MSJ:

> … it appears that Ms. Sullivan's declaration, even without exhibits, contained factual statements – not conclusions – regarding the timing of the transfer of the payment (which was immediate) from MET's lawyers to the eventual recipient, and whether Met ever had access to the money (it didn't, only the law firm did). (See Adv. Proc. Dkt. 23, Sullivan Decl. at ¶¶ 18-19)...  In other words, Ms. Sullivan – whose firm handled the transfer of funds from debtor to Legalist – had personal knowledge of the facts which she described in the declaration (See Adv. Proc. Dkt. 23, Sullivan Decl. at ¶¶ 1, 16-20)…

BK ECF 946 (Decision) 9:22- 10:8.

Debtor appealed, and the Ninth Circuit ordered the parties to fully brief all issues, including appellate jurisdiction; after the Debtor and MET fully briefed the issues, the Ninth Circuit dismissed the appeal without passing on the merits of the District Court's Decision.  BK ECF 1128 (order) 4 n.1

## III.    FACTUAL BACKGROUND

### A.    Hologenix Paid MET $100,000 Pursuant to a Settlement Agreement

In 2019, MET filed a lawsuit against Hologenix (the "MET Action").[11]  On March 6, 2020, Hologenix and MET entered into a *Confidential Settlement Agreement and General Release* (the "Settlement Agreement").[12]  There were no parties to the Settlement Agreement other than Hologenix and MET.[13]  Hologenix agreed to pay MET a total of $2.5 million.[14]  The initial payment, in the amount of $100,000, was to be made within one business day after execution of the Settlement Agreement.[15]

---

[11] *Multiple Energy Technologies, LLC v. Hologenix, LLC*, CACD case no. 2:19-cv-01483-PA-RAO.

[12] AP ECF 13 (Hgx MSJ, Arnold Decl.) 132-137.

[13] *See* AP ECF 13 (Hgx MSJ, Arnold Decl.) 132.

[14] AP ECF 13 (Hgx MSJ, Arnold Decl.) 132-133.

[15] AP ECF 13 (Hgx MSJ, Arnold Decl.) 133.

Pursuant to the Settlement Agreement, on March 9, 2020, Hologenix made a payment to MET in the amount of $100,000 by wiring the funds to MET's attorney's client trust account (the "Transfer").[16]  After the payment was made, the balance owed by Hologenix to MET under the Settlement Agreement was $2.4 million.[17]

### B.    MET Then Agreed to Pay $100,000 to Legalist

According to MET, on March 12, 2020 – six days *after* Hologenix and MET entered into the Settlement Agreement and three days *after* Hologenix paid MET – MET entered into a "Litigation Funding Agreement – Repayment and Release" (the "MET-Legalist Agreement") with Legalist.[18]  Hologenix was not a party to the MET-Legalist Agreement or any other agreement with Legalist.[19]

According to the MET-Legalist Agreement:

> Upon receipt of any and all Claim(s) Proceeds, the Counsel will hold any Claim(s) Proceeds received by it or by the Counsel on its behalf in trust for the Funder.  Payment shall be initiated by wire transfer to the Funder . . . within three (3) days of receipt as follows: a) $100,000 – paid immediately.[20]

According to MET, on March 16, 2020 – four days *after* MET and Legalist entered into the MET-Legalist Agreement, and fully seven days *after* Hologenix paid MET – MET's attorney wired $100,000 to Legalist.[21]

---

[16] AP ECF 13 (Hgx MSJ, Arnold Decl.) 216 (admission by MET "that MET received a single payment of $100,000.00 via wire on or about March 9, 2020, pursuant to a certain Settlement Agreement . . ."); AP ECF 29 (2nd Sullivan Decl.) 33 (screenshot of wire receipt).

[17] AP ECF 13 (Hgx MSJ, Arnold Decl.) 163-164.

[18] AP ECF 29 (2nd Sullivan Decl.) 9. AP ECF 23 (1st Sullivan Decl.).  The MET-Legalist Agreement states that it was made and entered into as of March 12, 2020.

[19] AP ECF 29 (2nd Sullivan Decl.) 9.  Hologenix did not even know about Legalist until MET filed its cross-motion for summary judgment.  Even in MET's discovery responses, MET hid Legalist's identity by referring to it as a "third-party transferee."  *See* AP ECF 13 (Hgx MSJ, Arnold Decl.) 216-217.  Then, even though MET represented that it would produce documents supporting its discovery responses, MET never produced documents. AP ECF 13 (Hgx MSJ, Arnold Decl.) 32, 235-235.

[20] AP ECF 29 (2nd Sullivan Decl.) 9.

[21] AP ECF 29 (2nd Sullivan Decl.) 34; AP ECF 23 (1st Sullivan Decl.) 4.

**C.    MET's Claim Against Hologenix in the Amount of $2.4 million**

On April 22, 2020, Hologenix filed bankruptcy.[22]  In July 2020, MET filed a proof of claim in Hologenix's bankruptcy case.[23]  The proof of claim identified MET as the creditor.[24]  It stated that payments should be made to MET.[25]  It was signed by MET's attorney as "the creditor's attorney or authorized agent."[26]  MET's proof of claim did not mention Legalist or say anything to the effect that MET had any obligation to forward payments from Hologenix to a third party.  In January 2021, the Bankruptcy Court entered an order allowing MET's claim as a general unsecured claim in the amount of $2.4 million.[27]

**D.    The Adversary Proceeding Complaint, MSJ, and Cross-MSJ**

In April 2022, Hologenix filed a complaint against MET to avoid and recover the Transfer.[28]  In October 2022, Hologenix filed a motion for summary judgment (the "MSJ").[29]  Hologenix argued that it was entitled to avoid the Transfer as a preference pursuant to section 547.  Hologenix also argued that it was entitled to recover the Transfer from MET pursuant to section 550(a)(1).[30]

MET filed an opposition and cross-motion for summary judgment (the "Cross-MSJ").[31]  MET did not dispute that there were no genuine issues of material fact.[32]  MET argued that, based on the undisputed facts, MET was entitled to judgment because it (allegedly) was not the "initial transferee" of the Transfer.[33]  According to MET, because MET had agreed in the MET-

---

[22] *In re Hologenix, LLC*, CACB case no. 2:20-bk-13849-BR (the "**Bankruptcy Case**").

[23] AP ECF 13 (Hgx MSJ, Arnold Decl.) 129-137.

[24] AP ECF 13 (Hgx MSJ, Arnold Decl.) 129.

[25] AP ECF 13 (Hgx MSJ, Arnold Decl.) 129.

[26] AP ECF 13 (Hgx MSJ, Arnold Decl.) 131.

[27] AP ECF 13 (Hgx MSJ, Arnold Decl.) 163-164 216.

[28]  AP ECF 13 (Hgx MSJ, Arnold Decl.) 139-164.

[29] AP ECF 13 (Hgx MSJ) 1-247.

[30] Section 550(a)(1) provides that when a transfer is avoided, the property may be recovered from the "initial transferee" or "the entity for whose benefit such transfer was made."

[31] AP ECF 22 (MET's Cross-MSJ) 1-18.

[32] AP ECF 22 (MET's Cross-MSJ) 17 (¶¶ 69-70).

[33] AP ECF 22 (MET's Cross-MSJ) 17 (¶ 71).

1   Legalist Agreement to forward the $100,000 to Legalist, MET was a "mere conduit" and not an

2   "initial transferee."[34]    Even though the MET-Legalist Agreement did not even exist when the

3   Transfer was made, MET argued that "the [Transfer] created an immediate contractual obligation

4   on MET's part to transfer the same to Legalist."[35]

5         **E.**     **The Two Sullivan Declarations and Exhibits Thereto**

6         MET filed a declaration of its counsel, Ms. Sullivan, in support of the Cross-MSJ,[36] but

7   Ms. Sullivan did not herself sign the declaration, and no exhibits were attached to the

8   declaration.[37]    On the morning of the MSJ hearing, MET filed a second declaration by Ms.

9   Sullivan, attaching two heavily redacted exhibits that purported to support (but actually disprove)

10  MET's argument that it was a "mere conduit."[38]

11  **IV.**    **DISCUSSION**

12        **A.**    **Ms. Sullivan's Declaration and Exhibits Thereto Support Summary**

13             **Judgment in Favor of Debtor and Against MET**

14        MET's assertion that it was entitled to summary judgment was based on allegations that

15  were squarely contradicted by the evidence submitted by MET in support of the Cross-MSJ.[39]

16  Identifying the undisputed material facts that purportedly supported judgment in MET's favor,

17  MET said that, "(iv) on or about March 9, 2020, Debtor wired the sum of $100,000 to MET's

18  counsel; and (v) MET's counsel ***immediately*** wired the same $100,000 to Legalist as it was

19

20

---

[34] *See id.*

21

[35] AP ECF 22 (MET's Cross-MSJ) 11 (¶ 38).

22

[36] AP ECF 23 (1st Sullivan Decl.) 1-9.

23

[37] AP ECF 23 (1st Sullivan Decl.) 5.

24

[38] Around midnight the night before the hearing, MET filed an ex parte motion for leave to file
    the exhibits under seal.  AP ECF 29 (Ex Parte Mtn to Seal) 1-42.  It was only then that
    MET submitted heavily-redacted versions of exhibits A (the MET-Legalist Agreement) and

25

    B (screenshots showing the dates on which Hologenix paid MET and MET paid Legalist)
    to Ms. Sullivan's declaration.  *See*, AP ECF 29 (2nd Sullivan Decl.) 9-41.  On the merits,

26

    the Bankruptcy Court denied MET's motion for leave to file unredacted versions of the
    exhibits under seal.  AP ECF 30 (order denying Ex Parte Mtn to Seal) 1-2.

27

[39] Generally, for ease of discussion, this brief treats Ms. Sullivan's declaration as if it had been
    signed, and the exhibits to her declaration as if they had been filed with the Cross-MSJ.

28

1    contractually required to do.[40]” MET’s statement was false because, while Hologenix did made

2    the Transfer on March 9, 2020, based on MET’s own evidence, the subsequent transfer from

3    MET to Legalist was not made immediately but an entire week later on March 16, 2020.[41]

4    **V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR DEBTOR AND**

5    **AGAINST MET**

6    **A. Legal Standard for Summary Judgment**

7    FRCP 56 applies in bankruptcy adversary proceedings.  Fed. R. Bankr. P. 7056.  If a

8    moving party shows that there is no genuine dispute as to any material fact, and that the moving

9    party is entitled to judgment as a matter of law, the court must grant summary judgment.  Fed. R.

10   Civ. P. 56(a).

11   A declaration used to support or oppose a motion must be made on personal knowledge,

12   set out facts that would be admissible in evidence, and show that the declarant is competent to

13   testify on the matters stated.  Fed. R. Civ. P. 56(b)(4).  If a party fails to properly support an

14   assertion of fact or properly address another party’s assertion of fact, the court may, among other

15   things, consider a fact undisputed for purposes of the motion, or grant summary judgment if the

16   motion and supporting materials show that the movant is entitled to it.  Fed. R. Civ. P. 56(e).

17   The mere existence of some alleged factual dispute will not defeat a properly supported

18   motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

19   “[T]he requirement is that there be no *genuine* issue of *material* fact.”  *Id.* at 248 (emphasis in

20   original).  A dispute about a material fact is “genuine” only if the evidence is such that a

21   reasonable jury could return a verdict for the non-moving party.  *Id.*  A party opposing the

22   motion must set forth specific facts showing that there is a genuine issue for trial.  *Id.*  There is

23   no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to

24   return a verdict for that party.  *Id.*  If the evidence is merely colorable, or is not significantly

25

26   [40] AP ECF 22 (MET Cross-MSJ) 17 (¶ 69) (emphasis added).  A few paragraphs later, MET
     repeated that “MET had a clear contractual obligation to transfer those same funds to
27   Legalist immediately after receiving the funds.” *Id.* (¶ 71).

28   [41] AP ECF 29 (2nd Sullivan Decl.) 34.

1    probative, summary judgment may be granted.  *Id.* at 249-50.  Further, where the only disputes

2    relate to the legal significance of undisputed facts, "the controversy collapses into a question of

3    law suitable to disposition on summary judgment."  *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. &*

4    *Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

5         "When opposing parties tell two different stories, one of which is blatantly contradicted

6    by the record, so that no reasonable jury could believe it, a court should not adopt that version of

7    the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S.

8    372, 380 (2007).   In *Scott*, when opposing a motion for summary judgment, the plaintiff

9    provided a version of events that was clearly contradicted by videotape evidence of what

10   happened.  *Id.* at 378.  The Supreme Court wrote that the plaintiff's version of events was

11   sufficiently discredited by the record that no reasonable jury could have believed him.  *Id.* at 380.

12   After applying the indisputable facts to the applicable law, the Supreme Court ruled that the

13   defendant was entitled to summary judgment.  *Id.* at 386.

14        Similarly, bare assertions of a legal conclusion, not supported by any other specific facts

15   showing that there is a genuine issue for trial, is not enough.  *See Bader v. N. Line Layers, Inc.*,

16   503 F.3d 813, 820 n.4 (9th Cir. 2007).   When a non-moving party relies only on its own

17   affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by

18   factual data to create an issue of material fact.  *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993);

19   *U.S. v. 1 Parcel of Real Prop., Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 492 n.3 (9th Cir.

20   1990).  For example, in *Gajiu v. Ehrenberg* (*In re Goldshtadt*), 2019 WL 4200802 (9th Cir. BAP

21   Sept. 4, 2019), a trustee sought a determination that certain real property was community

22   property and therefore property of the bankruptcy estate.  In an attempt to defeat the claim, a

23   defendant stated in a declaration that her mother provided funds for the property as a "separate

24   property gift."  The bankruptcy court and the BAP ruled that this legal conclusion, unsupported

25   by specific facts, did not raise a genuine issue of material fact.  *Goldshtadt*, at *6.

26   **B.  The Sullivan Declarations and MET's Exhibits Support Summary Judgment for**

27   **Debtor and Against MET**

28        Even though paragraphs 16 and 18 of Ms. Sullivan's sworn testimony state that $100,000

was "immediately" transferred to Legalist after being received from Hologenix,[42] MET's own evidence proves that the $100,000 was transferred to Legalist a full seven days after the Transfer.[43]

Even if this Bankruptcy Court is forced to accept into evidence Ms. Sullivan's testimony that "MET never had any control or dominion over the $100,000" as a statement of fact by a percipient witness instead of a legal conclusion by the party's attorney,[44] MET's own documentary evidence contradicts Ms. Sullivan's statement because the MET-Legalist Agreement shows that MET had and exercised dominion over its funds.  First, MET admitted during discovery that the Transfer was a payment by Hologenix to MET pursuant to the Settlement Agreement.[45] Second, Ms. Sullivan unambiguously testified that MET transferred the $100,000 to Legalist pursuant to the agreement attached as Exhibit A to her declaration – i.e., the MET-Legalist Agreement, which was was "made and entered into as of March 12, 2020."[46]  In short, MET had three days after receipt of the Transfer to exercise dominion and control over the funds and enter into the MET-Legalist Agreement.

---

[42] As discussed in the Opening Brief, in paragraph 16 Ms. Sullivan did not personally testify that the $100,000 was almost immediately transferred to Legalist; she was actually testifying as to the contents of a writing to provide context for the next sentence of her declaration.  In paragraph 18, Ms. Sullivan was authenticating Exhibit B and (inaccurately) described the contents of the exhibit.

[43] Hologenix paid MET on March 9, 2020. AP ECF 13 (Hgx MSJ, Arnold Decl.) 216.  MET did not pay Legalist until seven days later, on March 16, 2020. AP ECF 29 (2nd Sullivan Decl.) 34; AP ECF 23 (1st Sullivan Decl.) 4.

[44] Bare assertions of a legal conclusion, not supported by any other specific facts showing that there is a genuine issue for trial, is not enough.  *See Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 820 n.4 (9th Cir. 2007).  When a non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993); *U.S. v. 1 Parcel of Real Prop., Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 492 n.3 (9th Cir. 1990).

[45] *See, e.g.*, AP ECF 13 (Hgx MSJ, Arnold Decl.) 216 (admitting "that MET received a single payment of $100,000.00 via wire on or about March 9, 2020, pursuant to a certain Settlement Agreement . . ..").

[46] AP ECF 29 (2nd Sullivan Decl.) 9 (Exhibit A), AP ECF 23 (1st Sullivan Decl.) 4 (transfer from MET to Legalist was pursuant to the document attached as Exhibit A).

MET stated in its Cross-MSJ, there are no genuine issues of material fact.[47]  On March 6, 2020, Hologenix and MET entered into a Settlement Agreement.[48]  The Settlement Agreement provided that "Hologenix shall pay MET" $2.5 million.[49]  Pursuant to the Settlement Agreement, on March 9, 2020, Hologenix paid MET $100,000.[50]  The payment was made by wiring the funds to MET's attorney's client trust account.[51]  As a result of the Transfer, the amount owed by Hologenix to MET was reduced from $2.5 million to $2.4 million.[52]  The foregoing demonstrates a very simply preference liability against MET as the initial transferee or the party for whose benefit the transfer was made.

On March 12, 2020 – six days *after* entering into the Settlement Agreement and three days *after* receiving the $100,000 – MET entered into an agreement with litigation funder Legalist, Inc. and agreed to pay $100,000 to Legalist.[53]  On March 16, 2020 – four days *after* signing the MET-Legalist Agreement, and a full seven days *after* Debtor transferred $100,000 to MET's counsel's trust account – MET's attorney wired $100,000 to Legalist.[54]  Hologenix was not a party to the MET-Legalist Agreement.[55]

## C. Ms. Sullivan's Declarations Are Contradicted by MET's Exhibits

Ms. Sullivan's testimony is contradicted by MET's own documentary evidence. MET's documents control over Ms. Sullivan's testimony that contradicts the contents of what those

---

[47]  AP ECF 22 (MET Cross-MSJ) 17 (¶ 69).

[48]  AP ECF 13 (Hgx MSJ, Arnold Decl.) 132-137.

[49]  AP ECF 13 (Hgx MSJ, Arnold Decl.) 132 (emphasis added); *see also* AP ECF 13 (Hgx MSJ, Arnold Decl.) 216 (admission by MET that the Settlement Agreement required Hologenix to "make a series of payments to MET totaling $2.5 million.").

[50]  *See* AP ECF 13 (Hgx MSJ, Arnold Decl.) 216 (admission by MET "that MET received a single payment of $100,000.00 via wire on or about March 9, 2020, pursuant to a certain Settlement Agreement . . .."). In multiple discovery responses, MET admitted that it received a payment of $100,000 on March 9, 2020.  *See generally* AP ECF 13 (Hgx MSJ, Arnold Decl.) 216-218, 223-224.

[51]  AP ECF 29 (2nd Sullivan Decl.)33-35.

[52]  AP ECF 13 (Hgx MSJ, Arnold Decl.) 163-164.

[53]  AP ECF 29 (2nd Sullivan Decl.) 9.

[54]  AP ECF 29 (2nd Sullivan Decl.) 34, 38; AP ECF 23 (1st Sullivan Decl.) 4.

[55]  AP ECF 29 (2nd Sullivan Decl.) 9.

1    documents say.  FED.R.EVID. 1002.  MET's own documentary evidence supports summary

2    judgment in Debtor's favor.

3           In paragraphs 16 and 17, Ms. Sullivan testified as follows:

4

5                  16.    In its Discovery Responses, MET admitted "only
               that MET received a single payment of $100,000 via wire on or
6               about March 9, 2020, pursuant to a certain Settlement Agreement
               and the payment was ***almost immediately*** transferred to a third-
7               party transferee."  See Arnold Declaration at Ex. 7.  The transfer
               was pursuant to that certain agreement (the "Legalist Agreement")
8               by and between MET and Legalist Fund II, L.P. ("Legalist").

9                  17.    The Legalist Agreement was not produced in
               discovery but is attached hereto as **Exhibit A**.[56]
10

11

12           The first sentence of paragraph 16 merely recited what MET said in a discovery response

13    that Hologenix had already put into the record.  Based on the evidence in the record, there is no

14    dispute that (1) MET received a payment of $100,000 via wire on March 9, 2020, pursuant to the

15    Settlement Agreement, and (2) MET's counsel transferred $100,000 to a third-party transferee

16    (i.e., Legalist).  But ***MET's own evidence in support of the Cross-MSJ*** conclusively disproves

17    the statement that the transfer to Legalist occurred "almost immediately" after the Transfer was

18    made.  MET's Exhibit B clearly says that the $100,000 was wired out on March 16,

19    2020 – a full seven days after the Transfer was made.[57]  The District Court believed that the

20    timing of the payment to Legalist – particularly its immediacy after the Transfer was made – was

21    material.[58]  To the extent that the immediacy of the transfer is material, no reasonable jury could

22    believe that MET's counsel transferred the funds "almost immediately" when there was a one-

23    week delay in between the two transfers.  Accordingly, that portion of MET's discovery response

24    does not establish a *genuine* issue of material fact.

---

25    [56] AP ECF 29 (1st Sullivan Decl.) 4 (emphasis added).  Exhibit A was not attached to the
26       declaration.  A heavily-redacted version was eventually submitted with MET's motion for
         authority to file the exhibit under seal.  AP ECF 29 (2nd Sullivan Decl.) 9-31.

27    [57] AP ECF 29 (2nd Sullivan Decl.) 33-35.

28    [58] BK ECF 946 (Decision) 9 (lines 24-25).

1    The second sentence of Ms. Sullivan's Declaration paragraph 16 says only that the

2    $100,000 was transferred to Legalist pursuant to the MET-Legalist Agreement, which is then

3    authenticated in paragraph 17.

4    In paragraph 18, Ms. Sullivan testified as follows:

6    18.    Additionally, screenshots of the wire transfer
showing the receipt of payment in the amount of $100,000 by
White and Williams LLP from [Hologenix], and the ***immediate***
7    transfer to Legalist of the same is attached hereto as **Exhibit B**.[59]

9    In this paragraph, Ms. Sullivan authenticates Exhibit B and goes further to testify about what

10    Exhibit B says, but Ms. Sullivan's testimony is contradicted by the content of Exhibit B because

11    Exhibit B shows not an immediate transfer by a transfer on March 16, 2020, an entire one week

12    after the initial Transfer.[60]   When a party tells a story "which is blatantly contradicted by the

13    record, so that no reasonable jury could believe it, a court should not adopt that version of the

14    facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372,

15    380 (2007).   Like the plaintiff in *Scott* who told a story blatantly contradicted by the video record

16    evidence, here, MET cannot defeat issuance of summary judgment by submitting testimony in a

17    declaration that is so blatantly contradicted by the documentary evidence submitted along with it.

18    Furthermore, it bears noting here that MET willfully changed its position midstream in an

19    attempt to avoid its liability in this action, for in its verified discovery responses, MET stated that

20    "***MET received*** a single payment of $100,000 via wire on or about March 9, 2020, pursuant to a

21    certain Settlement Agreement and the payment was ***almost immediately*** transferred to a third-

22    party transferee."   Quite clearly, this established liability for MET.   However, when MET filed

23    its Cross-MSJ, MET materially changed its position to describe the transfer as "a receipt of

24    payment in the amount of $100,000 ***by White and Williams LLP*** from [Hologenix], and the

---

[59] AP ECF 29 (1st Sullivan Decl.) 4.  Exhibit B was not attached to the declaration.  A heavily-
redacted version was eventually submitted with MET's motion for authority to file the
exhibit under seal.  AP ECF 29 (2nd Sullivan Decl.) 34-41.

[60] This is, of course, why the best evidence rule exists.

13

*immediate* transfer to Legalist of the same."  In MET's revisionist Cross-MSJ, MET no longer receives the transfer, and the subsequent transfer has shifted from "almost immediately" to "immediate," but MET's own documentary evidence proves that MET made false statements both times because an entire week passed between the initial transfer and the subsequent transfer, which is neither "immediate" nor "almost immediate."

In paragraph 19, Ms. Sullivan testified as follows:

> 19.    MET never had any control or dominion over the $100,000 that White and Williams LLP received from Hologenix, LLC pursuant to the parties' settlement agreement.[61]

The paragraph 19 testimony is insufficient to manufacture a genuine issue of material fact.  This statement was legal argument disguised as "testimony" by MET's attorney, who was testifying as a percipient witness, not an expert.  No person, speaking normally, would ever say that someone lacked "dominion" over funds.  Ms. Sullivan knew that the relevant legal test in the Ninth Circuit is the "dominion" test, and that the test in some other circuits is the "control" test, as was shown in the legal brief filed concurrently with the declaration.[62]   Ms. Sullivan's "testimony" that MET never had "control or dominion" over the funds was simply a legal conclusion, not evidence.  As the Supreme Court said, a party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine dispute.  *Liberty Lobby*, 477 U.S. at 248.  A party cannot rely on conclusory allegations not supported by factual data.  *Hansen*, 7 F.3d at 138.  Bare assertions of a legal conclusion, not supported by other facts, is not enough.  *Bader*, 503 F.3d at 820 n.4.  Nonetheless, to the extent that the Bankruptcy Court must consider this testimony, it should do so in parallel with what MET's own documentary evidence actually shows, i.e., that MET had the funds in its attorney trust account for a full three days before the date of the MET-Legalist Agreement.

---

[61] AP ECF 29 (1st Sullivan Decl.) 4.
[62] AP ECF 22 (MET Cross-MSJ) 10.

To the extent the statement in paragraph 19 is treated as non-conclusory fact testimony, MET's own documentary evidence proves that the statement was false.  The "dominion" test focuses on whether the recipient can use the property for its own purposes.  MET's evidence demonstrates that the Transfer occurred when Hologenix transferred $100,000 to MET's attorney's client trust account pursuant to the Settlement Agreement.  Obviously, MET's counsel held the funds as MET's fiduciary.[63]  Three days after receiving the Transfer, MET exercised "dominion" over the funds by (1) entering into the MET-Legalist Agreement in which MET agreed that $100,000 would be paid to Legalist and (2) transferring the funds to Legalist four days later.  Here again, as in *Scott*, MET cannot use clearly false testimony to block issuance of summary judgment.

**D.  MET Was the "Initial Transferee," Not a "Mere Conduit"**

The Bankruptcy Code does not define the term "initial transferee."  The general rule is that the party who receives a transfer from the debtor is the initial transferee.  *Universal Serv. Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors of Incomnet Commc'ns Corp. (In re Incomnet, Inc.*), 463 F.3d 1064 (9th Cir. 2006).

Courts have long held that in a two-step transaction in which Party A pays Party C, but the funds flow through an intermediary (Party B), Party C is the "initial transferee" (and thus liable under § 550(a)(1)) while Party B is a "mere conduit" (and thus not liable).  This common-sense rule exists because automatically treating anyone who touches the money as a "transferee" would lead to absurd results.[64]  *See Henry v. Official Comm. of Unsecured Creditors of*

---

[63] *See, e.g.*, New York Rules of Professional Conduct, Rule 1.15(a) ("A lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds or property or commingle such funds or property with his or her own."), 1.15(c)(4) (attorney must "promptly pay or deliver to the client or third person as requested by the client or third person the funds, securities, or other properties in the possession of the lawyer that the client or third person is entitled to receive").

[64] This case is a good example.  The Transfer was made into MET's attorney's client trust account.  Nobody would legitimately suggest that the law firm is the "initial transferee" and therefore should be held liable as an "initial transferee."  In contrast, had the Transfer been made into the law firm's general account, the law firm would liable under section 550(a)(1).

1   *Walldesign, Inc.* (*In re Walldesign, Inc.*), 872 F.3d 954, 962 (9th Cir. 2017).    Under the

2   functional rule adopted by most courts, including the Ninth Circuit, the focus is on whether the

3   entity had "dominion" over the funds – i.e., the right to use the funds for its own purposes.

4        An early leading decision on this issue is the Seventh Circuit's opinion in *Bonded Fin.*

5   *Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890 (7th Cir. 1988).    The debtor (Bonded) sent a

6   $200,000 check to a bank, payable to the bank, with instructions to deposit the check into the

7   account of Mike Ryan (Ryan).    Ten days later, Ryan instructed the bank to apply $200,000 to

8   reduce a loan that Ryan owed the bank.    When Bonded filed for bankruptcy and a trustee sued

9   the bank to recover the $200,000, the bank argued that it handled the check as a mere conduit.

10  The Seventh Circuit said that if Bonded had delivered the check with instructions to the bank to

11  use the funds to reduce Ryan's loan, the bank would have been the "initial transferee."    But the

12  bank acted only as a financial intermediary, no different than a courier or an intermediary on a

13  wire transfer.    Because the bank did not have "dominion" over the funds – i.e., the right to use

14  the money for its own purposes – it was not the initial transferee.    The court said that "[w]hen A

15  gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be

16  disregarded."    *Bonded*, 838 F.2d at 893 (emphasis added).

17       The leading Ninth Circuit case on this issue is *Incomnet*.    Incomnet was a

18  telecommunications company that was required by federal law to contribute to a "Universal

19  Support Fund" (the Fund).    The FCC designated an entity called Universal Service

20  Administrative Company (USAC) to collect, pool and disburse the monies paid into the Fund.

21  Incomnet filed for bankruptcy, and a complaint was filed to avoid and recover about $470,000

22  paid by Incomnet to USAC during the 90-day preference period.    USAC argued that because of

23  the significant legal restrictions under which it operated and its concomitant limited discretion, it

24  was a "mere conduit" and not an "initial transferee."

25       The Ninth Circuit rejected USAC's argument.    The court confirmed that the proper test

26  for determining whether a recipient is a transferee is the "dominion" test – i.e., whether the

27  recipient had the ability to use the property for its own purposes.    *See Incomnet*, 463 F.3d at

28  1069-70.    The focus is on whether the recipient had legal authority over the money transferred

1    and the right to use it however it wished. *Id.* at 1070. Applying the dominion test, the court

2    concluded that USAC was an initial transferee because USAC was neither an agent nor a mere

3    conduit for some other party. *Id.* at 1073. As evidence of this, the court pointed out that USAC

4    had filed a proof of claim in the case, asserting a claim on its own behalf for additional charges

5    owed by Incomnet to USAC. *Id.* The court also emphasized that "USAC received the funds

6    from Incomnet without any restrictions *from Incomnet* on their use." *Id.* at 1075 (emphasis in

7    original).

8            The Ninth Circuit applied the dominion test again in *Mano-Y & M, Ltd. v. Field* (*In re*

9    *The Mortg. Store, Inc.*), 773 F.3d 990 (9th Cir. 2014). In that case, a buyer (Lindell) entered into

10   a contract to buy property from the owner (Mano). An attorney (Freeland) acted as an escrow,

11   and in that capacity was responsible to receive the purchase money, distribute the money

12   according to the contract, and perform other closing-related functions. Lindell's lender (The

13   Mortgage Store) wired about $311,000 to Freeland in partial satisfaction of Lindell's obligations

14   to Mano. Freeland deposited the funds in a trust account and then disbursed the funds to Mano

15   pursuant to the contract. Later, when The Mortgage Store filed for bankruptcy and the transfer

16   was avoided, Mano argued that Lindell (as the one borrowing the funds from The Mortgage

17   Store) was the initial transferee.

18           The bankruptcy court, the district court and the Ninth Circuit rejected Mano's argument.

19   Under the facts of that case, Lindell had no right to control the distribution of the funds loaned

20   by The Mortgage Store for the purpose of paying Mano. Lindell could not have prevented the

21   distribution to Mano, or used the funds for another purpose. The court concluded that Mano, not

22   Lindell, was the "initial transferee" for purposes of § 550(a). *Mortg. Store*, 773 F.3d at 997.

23           Another instructive case applying the dominion test is *Zazzali v. Goldsmith* (*In re DBSI*

24   *Inc.*), 593 B.R. 795 (Bankr. D. Idaho 2018). A non-debtor (Kastera) entered into a contract to

25   purchase real property from another non-debtor (Goldsmith). Kastera borrowed $3 million from

26   the debtor (DBSI) for the purpose of paying the earnest money deposit (about $3 million) to

27   Goldsmith. After DBSI filed for bankruptcy, the bankruptcy court determined that DBSI was

28   operating massive Ponzi scheme, and that Kastera was part of the fraudulent scheme. *DBSI*, 593

17

1    B.R. at 819-20.    The court therefore determined that the $3 million transfer by DBSI was

2    avoidable as a fraudulent transfer.  *Id.* at 823.

3          DBSI's trustee sought to recover the $3 million from Goldsmith.  The trustee argued that

4    Goldsmith was the "initial transferee" and therefore was liable under § 550(a).   Goldsmith

5    argued that Kastera was the initial transferee and Goldsmith was a subsequent transferee, and

6    therefore Goldsmith was entitled to raise defenses available only to subsequent transferees.  The

7    court agreed with Goldsmith.  *Id.* at 825.  Even though Kastera was part and parcel of the

8    fraudulent Ponzi scheme, and the $3 million was transferred by DBSI to Kastera for the purpose

9    of funding the earnest money deposit, Kastera still had "dominion" over the funds.  They were

10   deposited into Kastera's account, and Kastera had the ability to use the funds for other purposes.

11   Accordingly, Kastera was the "initial transferee" and Goldsmith was a subsequent transferee.

12         the dominion test to the undisputed facts is straightforward.  Hologenix and MET had a

13   Settlement Agreement under which Hologenix was required to pay MET.  This made MET a

14   creditor of Hologenix, which is why MET (not Legalist) later filed a proof of claim in

15   Hologenix's case.  Hologenix paid $100,000 to MET pursuant to the Settlement Agreement.

16   MET was not acting as a bank, courier, financial intermediary, or escrow agent.  Hologenix did

17   not have any contractual obligation to pay Legalist.  Hologenix did not make the Transfer with

18   instructions to use the funds to pay Legalist.  Indeed, like USAC in *Incomnet*, MET received the

19   Transfer from Hologenix without any restrictions from Hologenix on their use.  MET had the

20   right, and a week later exercised the right, to use the $100,000 to pay Legalist pursuant to the

21   MET-Legalist Agreement (which did not exist when the Transfer was made, and to which

22   Hologenix was not a party).  Therefore, as a matter of law, MET had (and exercised) "dominion"

23   over the funds, and was the "initial transferee" of the Transfer.

24   **E.  MET Was the "Entity for Whose Benefit Such Transfer Was Made"**

25         Sometimes the "initial transferee" is not the "entity for whose benefit such transfer was

26   made."   Therefore, section 550(a) provides that when a transfer is avoided the transferred

27   property may be recovered from "the initial transferee of such transfer *or* the entity for whose

28   benefit such transfer was made."  11 U.S.C. § 550(a) (emphasis added).  The word "or" is not

1    exclusive.  11 U.S.C. § 102(5).  Section 550 imposes strict liability on both the initial transferee

2    and any other beneficiaries of the avoided transfer.  *Walldesign*, 872 F.3d at 965.

3        Aside from obvious circumstances such as the one in this case, one application of the

4    "entity for whose benefit such transfer was made" prong of section 550(a)(1) is found is *Merrill*

5    *v. Dietz* (*In re Universal Clearing House Co.*), 62 B.R. 118 (D. Utah 1986).  In that case, the

6    debtor wrote a $10,000 check to an attorney (Ayervais) with the notation "for Thomas Dietz."

7    When the transfer was avoided, the court found that Dietz was an entity for whose benefit the

8    transfer was made, and, therefore was liable under section 550(a)(1).  *Universal Clearing*, 62

9    B.R. at 127.  In response to Dietz's argument that he did not ultimately benefit from the services

10   rendered by the attorney, the court noted that section 550(a)(1) requires that the transfer have

11   been made for the benefit of the entity from which the trustee seeks recovery, but does not

12   require that the entity actually receive the benefit.  *Id.*

13       Cases also establish that an "entity for whose benefit such transfer was made" includes

14   guarantors or parties that have obligations to the initial transferee.  *See*, *Lowry v. Sec. Pac. Bus.*

15   *Credit, Inc.* (*In re Columbia Data Prods., Inc.*), 892 F.2d 26, 29 (4th Cir. 1989).  Thus, when a

16   debtor pays a creditor to satisfy a debt guaranteed by a third party, the creditor is the "initial

17   transferee" and the guarantor is an "entity for whose benefit the transfer is made" because the

18   payment reduced the guarantor's liability.  *Id.*

19       If MET is somehow not the "initial transferee" of the Transfer, MET is still nonetheless

20   an entity for whose benefit the transfer was made.  First, the Transfer to MET was a partial

21   payment of Hologenix's debt to MET, and MET realized a $100,000 benefit, acknowledged by

22   the claims objection order showing the debt owed to MET reduced from $2.5 million to $2.4

23   million.[65]  Second, because MET used or directed $100,000 to pay Legalist, that payment was

24   made for the benefit of MET in the same way the *Universal Clearing* debtor's payment to

25   Ayervais benefitted Dietz.  Third, as in *Columbia Data*, the payment to Legalist pursuant to the

26   MET-Legalist Agreement reduced MET's liability to Legalist.  Accordingly, even if MET was

---

[65] AP ECF 13 (Hgx MSJ, Arnold Decl.) 129-137.

1    not the "initial transferee," MET is still strictly liable under section 550(a)(1) as the entity for

2    whose benefit the $100,000 transfer was made.

3    **VI.    CONCLUSION**

4    **WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

5    (1)    Granting summary judgment in favor of Debtor and against MET;

6    (2)    Denying MET's cross-motion for summary judgment against Debtor;

7    (3)    Amending the Order to include augmented findings and conclusions that account

8    for the declarations of Nicole Sullivan and the exhibits attached thereto; and

9    (4)    Granting such further and other relief as the Court deems just and proper.

10    Dated:  March 10, 2026                    HOLOGENIX, LLC

11                                    By:___/s/ John-Patrick M. Fritz_____
12                                        Ron Bender
                                        John-Patrick M. Fritz
13                                    LEVENE, NEALE, BENDER, YOO
                                        & GOLUBCHIK L.L.P.
14                                    Attorneys for Plaintiff and Chapter 11 Debtor and
                                    Debtor in Possession
15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Brief In Support Of Summary Judgment After Remand From The District Court** be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 10, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On March 10, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the `document is filed.
☐  Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 10, 2026  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 10, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| Date | Printed Name | Signature |

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com,**
  **smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Tinho Mang    tmang@marshackhays.com,**
  **tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **Nicole Sullivan    sullivann@whiteandwilliams.com,**
  **vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **David Wood    dwood@marshackhays.com,**
  **dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**
-