ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
  *rzur@elkinskalt.com*
LAUREN N. GANS, State Bar No. 247542
  *lgans@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Nicole A. Sullivan (pro hac vice)
sullivann@whiteandwilliams.com
Thomas E. Butler (pro hac vice)
butlert@whiteandwilliams.com
WHITE AND WILLIAMS LLP
810 Seventh Avenue, Suite 500
New York, New York 10019
(212) 631-4420

Attorneys for Creditor Multiple Energy
Technologies, LLC

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>HOLOGENIX, LLC,<br><br>　　　　Debtor and Debtor in<br>　　　　Possession. | Case No. 2:20-bk-13849-BR<br><br>Chapter 11 (Subchapter V)<br><br>Adversary Case No. 2:22-ap-01098-BR<br><br>Hon. Barry Russell |
| HOLOGENIX, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MULTIPLE ENERGY TECHNOLOGIES LLC,<br><br>　　　　Defendant. | **MULTIPLE ENERGY TECHNOLOGIES, LLC'S RESPONSE TO DEBTOR'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT AFTER REMAND FROM THE DISTRICT COURT**<br><br>Hearing:<br>Date: May 26, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 1668<br>　　　255 East Temple Street<br>　　　Los Angeles, CA 90012 |

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 2 |
|  | A. Prepetition Litigation and Settlement | 2 |
|  | B. The Bankruptcy Proceedings and Judgment Against MET | 3 |
|  | C. The District Court Order | 5 |
| III. | ARGUMENT | 6 |
|  | A. The District Court's Finding that the Sullivan Declaration Creates a Triable Issue of Fact is Law of the Case | 6 |
|  | B. Even if the Court Reconsiders Summary Judgment, it Fails for the Same Reason the District Court Reversed the Prior Order | 8 |
|  | 1. Legal Standard on Summary Judgment | 8 |
|  | 2. Debtor's Contradictory Evidence Argument Was Already Rejected | 9 |
|  | 3. Whether MET Exercised Dominion is a Disputed Question of Fact | 10 |
|  | 4. Debtor's Subjective Intent Cannot Create "Dominion" Where MET Lacked Legal Title and Control | 12 |
|  | 5. The Cases Relied on By Debtor Do Not Require a Different Outcome | 13 |
|  | 6. The Debtor's "Entity for Whose Benefit" Theory is Procedurally Barred and Legally Flawed | 15 |
|  | C. The Transfer is Protected as a Contemporaneous Exchange for New Value | 17 |
| IV. | CONCLUSION | 17 |

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albino v. Baca,*
747 F.3d 1162 (9th Cir. 2014)......................................................................................... 9

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................................... 9, 10

*Block v. City of Los Angeles,*
253 F.3d 410 (9th Cir. 2001) ........................................................................................... 9

*Bonded Fin. Servs. v. European Am. Bank.,*
838 F.2d 890 (7th Cir. 1988) ..................................................................................... 11, 13

*Carson Harbor Vill., Ltd. v. Unocal Corp.,*
No. 96-CV-3281-MMM, 2003 U.S. Dist. LEXIS 14438 (C.D. Cal. Aug. 8,
2003)................................................................................................................................. 6

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................................................ 9

*Danning v. Miller (In re Bullion Reserve of N. Am.),*
922 F.2d 544 (9th Cir. 1991)........................................................................... 11, 12, 15, 16

*Diamond v. Empire Partners, Inc. (In re Empire Land, LLC),*
No. 6:09-ap-01235-MH, 2016 Bankr. LEXIS 1088 (Bankr. C.D. Cal. 2016) ...................... 11

*Fraser v. Goodale,*
342 F.3d 1032 (9th Cir. 2003)......................................................................................... 9

*General Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.)*
185 B.R. 801 (9th Cir. BAP 1995).............................................................................. 11, 13

*Goldsmith v. Zazzali as Trustee for Debtor's Jointly-Administered Chapter 11
Estates,*
814 F. App'x 279 (9th Cir. 2020)..................................................................................... 14

*Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re
Walldesign, Inc.)*
872 F.3d 954 (9th Cir. 2017)........................................................................................... 12

*In re Incomnet, Inc.,*
463 F.3d 1064 (9th Cir. 2006)..................................................................... 8, 11, 12, 13, 14

*Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.),*
892 F.2d 26 (4th Cir. 1989)............................................................................................ 16

*Mano-Y&M Ltd. v. Field (In re Mortgage Store, Inc.)*,
    773 F.3d 990 (9th Cir. 2014) ................................................................................................ 14

*Merrill v. Dietz (In re Universal Clearing House Co.)*,
    62 B.R. 118 (D. Utah 1986) ............................................................................................ 15, 16

*Richardson v. FDIC (In re M. Blackburn Mitchell Inc.)*,
    164 B.R. 117 (Bankr. N.D. Cal. 1994) .................................................................................. 11

*Santos v. Scindia Steam Navigation Co.*,
    598 F.2d 480 (9th Cir. 1979) ................................................................................................... 9

*Schoenmann v. BCCI Constr. Co.*,
    No. NC-07-1128, 2007 Bankr. LEXIS 4931 (BAP 9th Cir. Nov. 7, 2007) ........................... 11

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
    206 F.3d 1322 (9th Cir. 2000) ........................................................................................... 7, 9

*Shay v. Cty. of L.A.*,
    No. 2:15-CV-04607-CAS, 2019 U.S. Dist. LEXIS 162400 (C.D. Cal. Sep. 23,
    2019) ....................................................................................................................................... 6

*Solimano Framing Grp. LLC v. Pier Constr. & Dev., LLC (In re Solinmano
    Framing Grp. LLC)*,
    664 B.R. 803 (9th Cir. BAP 2024) .......................................................................................... 6

*Terry v. Meredith (In re Stephen S. Meredith, CPA, P.C.)*,
    527 F.3d 372 (4th Cir. 2008) ................................................................................................. 15

*Walsh v. Townsquare Assocs.* (*In re Montross*),
    209 B.R. 943 (9th Cir. BAP 1997) ................................................................................... 11, 12

*Willis v. City of Fresno*,
    No. 09-CV-01766-BAM, 2013 U.S. Dist. LEXIS 131433 (E.D. Cal. Sept. 13,
    2013) ....................................................................................................................................... 6

*Zazzali v. Goldsmith (In re DBSI Inc.)*,
    593 B.R. 795 (Bankr. D. Idaho 2018) ................................................................................... 14

**STATUTES**

11 U.S.C.
    § 502(d), and (4) ..................................................................................................................... 5
    § 547(b) ................................................................................................................................... 3
    § 547(b), (2) ............................................................................................................................ 5
    § 547(c) ................................................................................................................................. 17
    § 550 .................................................................................................................................... 7, 8
    § 550(a) ........................................................................................................................ 5, 11, 15

15 U.S.C. § 1125(a)(1)(B)) .......................................................................................................... 2

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7056 ................................................................................................................ 8

Fed. R. Civ. P. 56 ...................................................................................................................... 8

Fed. R. Civ. P. 56(a) ............................................................................................................. 4, 9

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Multiple Energy Technologies, LLC ("MET"), defendant in the above-captioned adversary proceeding, respectfully submits its brief in response to Hologenix, LLC's ("Debtor") *Brief in Support of Summary Judgment After Remand From The District Court* (Adv. Proc. Docket Doc. 104) (the "Brief").

## I.    INTRODUCTION AND SUMMARY

This matter returns to this Court following a total reversal by the District Court. In its remand order, the District Court was clear: the Declaration of Nicole A. Sullivan dated November 1, 2022 ("Sullivan Declaration") provides competent factual testimony that MET lacked access to, and control over, the $100,000 at issue. By reversing summary judgment in its entirety, the District Court established as the law of the case that a genuine dispute of material fact exists regarding MET's status.

The Debtor's Brief is a transparent attempt to bypass the appellate mandate and ignore the law of the case. After full briefing, the District Court reversed this Court's grant of summary judgment, expressly holding that the Sullivan Declaration—which states that MET never had control over the funds and that the transfer to a third party was immediate—creates a triable issue of fact. Because the District Court has already ruled that a genuine dispute exists, the "law of the case" doctrine compels the denial of the relief requested here, which appears to be Debtor's renewal of its prior motion for summary judgment.

Rather than preparing for the trial ordered by the District Court, the Debtor now asks this Court to do exactly what the appellate court forbade: to re-weigh the evidence, make credibility determinations, and resolve factual conflicts in the Debtor's favor. Even if this Court were to contravene the appellate mandate and re-weigh the evidence on remand, the Debtor's motion fails on the merits because the evidence establishes a genuine factual dispute regarding the "mere conduit" defense. The Sullivan Declaration establishes that MET did not have legal dominion over the funds and certainly could not do whatever it wished with the funds, and thus, is not an initial transferee. Moreover, for the same reason Debtor's alternative argument that MET is the "entity for whose benefit such transfer was made" also fails.

-1-

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Prepetition Litigation and Settlement

On February 28, 2019, MET commenced an action against the Debtor in the United States District Court for the Central District of California as Case No. 2:19-cv-01483-PA-RAO captioned *MET v. Hologenix*. The Pre-Petition Case arose out of Debtor's advertising and promotion of a certain bioceramic material it infringed upon from MET. MET asserted causes of action against Hologenix for: (i) violation of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)); (ii) intentional interference with economic advantage; and (iii) negligent interference with economic advantage. *Id*.

On or about March 6, 2020, and in settlement of the Pre-Petition Case, MET and the Debtor executed a *Confidential Settlement Agreement and General Release* (the "Settlement Agreement"). Case No. 2:22-ap-01098-BR ("AP"), Doc. 22, ¶ 10. Under the Settlement Agreement, the Debtor agreed to make payments over time to MET totaling $2,500,000.00 in separate payments as follows: (i) $100,000.00 within one (1) business day from execution of the Settlement Agreement (the "Initial Payment" or "Transfer"); (ii) $1,400,000.00 by April 23, 2020; (iii) $250,000.00 by February 1, 2021; (iv) $250,000.00 by June 30, 2021; (v) $250,000.00 by September 30, 2021; and (vi) $250,000.00 by December 30, 2021. *Id.*

In January 2020, MET executed an agreement with Legalist, Inc. ("Legalist"), under which Legalist agreed to provide funding to MET for the purpose of continuing the litigation against the Debtor. In exchange, MET agreed that, if it were successful in the District Court Case, it would immediately pay to Legalist the first $100,000.00 received either through a judgment against or through a settlement with the Debtor. AP Doc. 23, ¶ 16-18. On or about March 9, 2020, the Debtor sent the Initial Payment in the amount of $100,000.00 to MET's counsel via wire transfer pursuant to the terms of the Settlement Agreement. *Id.* at ¶ 18. This Initial Payment was never directly received by MET. *Id.* at ¶ 19. Pursuant to the Settlement Agreement, MET's counsel transferred the Initial Payment to Legalist via wire transfer, given that it was the first $100,000.00 received in the Pre-Petition Case. *Id.* at ¶¶ 16-18; AP Doc. 22, ¶¶ 10-13.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

**B.      The Bankruptcy Proceedings and Judgment Against MET**

On April 22, 2020, and one day before the Debtor was to make the second payment to MET pursuant to the Settlement Agreement, the Debtor filed a voluntary petition for relief (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California. AP Doc. 22, ¶ 14; Case No. 2:20-bk-13849-BR (the "Bankruptcy Docket"), Doc. 1.

On May 6, 2020, Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs. *Id.* at ¶ 15; Bankruptcy Docket, Doc. 49. In Schedule F, the Debtor listed MET as having a general unsecured claim against the Debtor's estate in the amount of $2,400,000.00. *Id.* The Debtor subsequently filed Amended Schedules of Assets and Liabilities to add creditors, among other things. *Id.*; Bankruptcy Docket, Doc. 82.

On July 8, 2020, MET filed its proof of claim ("POC No. 15") asserting a general unsecured claim in an "unknown" amount arising from the amounts due and owing under the Settlement Agreement. On November 11, 2020, the Debtor filed a *Motion for an Order Disallowing Claim No. 15 filed by Multiple Energy Technologies, LLC; Memorandum of Points and Authority; Declaration of Seth Casden in Support Thereof* (the "Claim Objection"), wherein the Debtor asserted that POC No. 15 is a liquidated claim in a known amount limited to the $2,400,000.00 remaining owing under the Settlement Agreement. *Id.* at ¶ 17; Bankruptcy Docket at Doc. 278. The Court granted the Claim Objection by the Order dated January 7, 2021, wherein the Court allowed POC No. 15 "solely as a general unsecured claim in the amount of $2,400,000.[00]." *Id.* at ¶ 18; Bankruptcy Docket, Doc. 358.

On April 20, 2022, Debtor commenced an adversary proceeding, Case No. 2:22-ap-01098-BR in the Bankruptcy Court, by filing a *Complaint for the following causes of action: (1) Avoidance of Preferential Transfer; (2) Recovery of Avoided Transfer; and (3) Disallowance of Claims* (the "Complaint"). AP Doc. 1. In the Complaint, the Debtor asserted that the Initial Payment represented an avoidable preferential transfer pursuant to 11 U.S.C. § 547(b). *Id.* at ¶ 17-28.

On June 6, 2022, MET filed its *Answer and Affirmative Defenses of Defendant Multiple Energy Technologies, LLC to Complaint to Avoid and Recover Preferences* (the "Answer"). AP Doc.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

-3-

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

4. In its Answer, MET admitted: (i) that it entered into the Settlement Agreement; and (ii) that Debtor wired $100,000.00 to MET's counsel under the terms of the Settlement Agreement. *Id.* at ¶ 9, 12. MET asserted sixteen (16) affirmative defenses to the claims set forth in the Complaint including, among others, that MET was a mere conduit rather than an initial transferee of the Initial Payment (fifth affirmative defense) and that MET gave contemporaneous new value in exchange for the Initial Payment (sixth affirmative defense). *Id.* at 6-7.

On October 11, 2022, the Debtor filed a motion for summary judgment ("Debtor's MSJ"). AP Doc. 13. The Debtor argued that summary judgment should be granted in its favor due to: (i) MET's admissions in its Answer; (ii) MET's failure to produce documents to Debtor in response to certain discovery requests; and (iii) MET's failure to propound any discovery of its own to Debtor. *Id.* On November 1, 2022, MET filed an opposition and cross-motion for summary judgment (the "MET MSJ"). AP Doc. 22. In the MET MSJ, it argued that summary judgment in its favor should be granted as: (i) MET was a mere conduit rather than an initial transferee of the $100,000.00 paid to it under the Settlement Agreement; (ii) MET received less than it would in a hypothetical Chapter 7 and, thus, was not liable for the return of the $100,000.00; (iii) the transfer of the $100,000.00 was a contemporaneous exchange for new value; and (iv) MET's verified interrogatory responses were evidence that summary judgment should be granted in its favor. *Id.* MET submitted the *Declaration of Nicole A. Sullivan in Opposition to Hologenix LLC's Motion for Summary Judgment* (the "Sullivan Declaration"). AP Doc. 23.

On November 22, 2022, the Court held a hearing on Hologenix's motion for summary judgment and MET's cross-motion for summary judgment. The Court entered its judgment (the "Judgment") in favor of the Debtor and granted its request to recover the $100,000.00 from MET. AP Doc. 33. In finding in favor of the Debtor and against MET, the Court did not give weight to MET's mere conduit defense and did not consider the value provided by MET to the Debtor on the fact that MET would provide more than $100,000.00 in a liquidation. Without providing any analysis, the Court stated that:

> There is no genuine dispute as to any material fact and the Plaintiff is
> entitled to a judgment as a matter of law pursuant to Fed. R. Civ. P.

56(a) on (1) Plaintiff's first [claim for relief] to avoid the $100,000[.00] Preferential Transfer pursuant to 11 U.S.C. § 547(b), (2) Plaintiff's second [claim for relief] to recover the $100,000[.00] Preferential Transfer from Defendant pursuant to 11 U.S.C. § 550(a), (3) Plaintiff's third [claim for relief] to disallow any and all claims of Defendant against Plaintiff, including but not limited to, Defendant's [Proof of Claim No.] 15 pursuant to 11 U.S.C. § 502(d), and (4) each and all of Defendant's alleged Affirmative Defenses against the [claims for relief].

AP Doc. 34 at 13-14. As a result, the Bankruptcy Court entered its Judgment against MET and in favor of the Debtor. AP Docs. 33, 34

### C. The District Court Order

MET subsequently appealed the Judgment to the District Court on December 27, 2022. AP Doc. 36. On appeal, MET argued that "[t]he Bankruptcy Court ignored key evidence concerning the mere conduit defense . . . that would have defeated summary judgment." Case No. 2:22-cv-07510-FMO (the "District Court Docket") at Doc. 40-4, 26.[1] Further, that the Bankruptcy Court failed to consider that the Sullivan Declaration presented a question of fact concerning the intent of the $100,000.00 payment. *Id.* The Debtor, among other things, insisted that regardless of whether MET was the initial transferee or not, it was still the "entity for whose benefit the transfer was made." *Id.* at 26.

The District Court entered the *Order re: Bankruptcy Appeals* reversing the Bankruptcy Court's grant of summary judgment in favor of the Debtor that was filed in the Bankruptcy Docket at Doc. 946 (the "Order"). The District Court reasoned that "there is no basis to conclude that Ms. Sullivan was not competent to provide the testimony she provided in her declaration." *Id.* at 9. Further, that "without weighing the declaration or making any sort of credibility determination . . .

---

[1] *See* MET's concurrently-filed Request for Judicial Notice ("RJN"), Exhibit 3, MET's and the Debtor's Joint Brief submitted to the District Court in Case No. 2:22-cv-07510-FMO filed at Doc. 40-4.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

it appears that Ms. Sullivan's declaration, even without the attached exhibits, contained factual statements – not conclusions – regarding the timing of the transfer of the payment (which was immediate) from M[ET]'s lawyers to the eventual recipient, and whether M[ET] ever had access to the money (it didn't, only the law firm did)." Order at 9. Lastly, the District Court reasoned that, "Ms. Sullivan – whose firm handled the transfer of funds from debtor to Legalist – had personal knowledge of the facts which she described in the declaration." *Id.* at 10. Accordingly, the District Court correctly reversed the Bankruptcy Court's grant of summary judgment in favor of the Debtor. *Id.*

## III.    ARGUMENT

### A.    The District Court's Finding that the Sullivan Declaration Creates a Triable Issue of Fact is Law of the Case

"'Under the law of the case doctrine, a court is barred from reconsidering an issue that already has been decided in the same court or in a higher court in the same case.'" *Solimano Framing Grp. LLC v. Pier Constr. & Dev., LLC (In re Solinmano Framing Grp. LLC)*, 664 B.R. 803, 816 (9th Cir. BAP 2024) (citation omitted)). "'An appellate holding that there remains a disputed issue of fact will preclude a later finding on remand that there is no dispute for summary judgment purposes.'" *Shay v. Cty. of L.A.*, No. 2:15-CV-04607-CAS (RAOx), 2019 U.S. Dist. LEXIS 162400, at *10 (C.D. Cal. Sep. 23, 2019) (quoting *Carson Harbor Vill., Ltd. v. Unocal Corp.*, No. 96-CV-3281-MMM (RCx), 2003 U.S. Dist. LEXIS 14438, at *2 (C.D. Cal. Aug. 8, 2003) and citing *Willis v. City of Fresno*, No. 09-CV-01766-BAM, 2013 U.S. Dist. LEXIS 131433, at *3 (E.D. Cal. Sept. 13, 2013) (concluding that "law of the case precludes judgment as a matter of law on remand from an appellate court's reversal of summary judgment if the appellate opinion specifically finds there are disputed issues of material fact that should be resolved by the jury") (internal marks omitted)).

Here, the District Court's Order explicitly found the Sullivan Declaration "contained factual statements—not conclusions—regarding the timing of the transfer of the payment (which was immediate) from Met's lawyers to the eventual recipient and whether Met ever had access to the money (it didn't, only the law firm did)." Order at 9:23-26. The District Court specifically noted, "Ms. Sullivan – whose firm handled the transfer of funds from debtor to Legalist – had personal

-6-

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

knowledge of the facts which she described in the declaration." *Id.* at 10. The District Court even cited to *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) and noted the Ninth Circuit had "summary judgment reversed where 'declarations set forth facts based on personal knowledge that give rise to a 'triable issue' of fact.'" *Id.* at 9-10. There is no other way to interpret the District Court's Order other than as a straightforward reversal of summary judgment based on the Sullivan Declaration's creation of a genuine dispute of material fact.

Despite this clear holding, Debtor asks this Court to revisit the timing of the transfer, whether MET was the initial transferee, or the transfer was for the benefit of MET. This request is wholly improper.

First, this Court originally ruled that MET was the initial transferee because it found the Sullivan Declaration lacked evidence of an "immediate" transfer. *Id.* at 9. The District Court reversed this, ruling that the Sullivan Declaration was "contained factual statements . . . [that] MET never had access to the money." *Id.* at 9-10. By stating the transfer was "immediate" and that MET "never had any control," the Sullivan Declaration creates a triable issue of fact as to whether MET ever exercised dominion—a prerequisite for "initial transferee" status under 11 U.S.C. § 550.

Second, the Debtor previously argued MET was the initial transferee because MET's own records showed the funds sat in a law firm account for a week before being sent to Legalist, which it claimed proved MET had "dominion" during that time. (District Court Docket, Doc. 40-4 at 28:24-29:6). The District Court found that this Court overstepped by weighing this evidence at the summary judgment stage. Order at 9. The Order emphasized that at this stage, the court must only look for a dispute of fact. *Id.* at 9:26-10:3. By reversing the grant of summary judgment, the District Court found the Sullivan Declaration – stating that the transfer was "immediate" and that MET "never had any control" – was sufficient to defeat summary judgment, even if other documents appear to contradict it.

Finally, The Debtor's alternative argument—that even if not the "initial transferee," MET is liable as the "entity for whose benefit" the transfer was made—is equally precluded from summary judgment. Brief at 18-19. The District Court reversed the entire summary judgment order. Order at

10. This total reversal nullified the previous finding of liability under any theory. Whether MET was an initial transferee or a beneficiary is now a factual dispute that must be fully litigated rather than decided on summary judgment. Indeed, Debtor's efforts to backdoor a new summary judgment motion in contravention of both the Order and Rule 56 should be wholesale rejected by this Court.

By reversing the prior grant of summary judgment in its entirety, the District Court held that the statements in the Sullivan Declaration give rise to a triable issue of fact. *Id.* at 9-10. This holding is now the law of the case. Consequently, the Debtor's attempts to re-weigh the evidence on remand must be rejected. This Court cannot "re-weigh" the Sullivan Declaration or find that no dispute exists without defying the appellate mandate.

**B.**    **Even if the Court Reconsiders Summary Judgment, it Fails for the Same Reason the District Court Reversed the Prior Order**

Even if this Court contravenes the appellate mandate and re-weighs the evidence on remand, the Debtor's motion fails on the merits because the evidence establishes a genuine factual dispute regarding the "mere conduit" defense. To be an "initial transferee" under 11 U.S.C. § 550, an entity must exercise "legal dominion" over the funds—meaning the legal authority to use the money however it wishes. The Ninth Circuit applies a strict dominion test, which focuses on whether the recipient had the right to put the money to its own purposes. *In re Incomnet, Inc.*, 463 F.3d 1064, 1070 (9th Cir. 2006). Under this standard, a "mere conduit" who simply holds funds for a third party without the power to redirect them is not an initial transferee. *Id.* at 1074.

**1.**    **Legal Standard on Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, as made applicable to bankruptcy adversary proceedings pursuant to Fed. R. Bankr. P. 7056:

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows *that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.* The court

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (emphasis added). Summary judgment can only be granted if there are *no* material questions of fact. *See Santos v. Scindia Steam Navigation Co.,* 598 F.2d 480, 483 (9th Cir. 1979). Where there are genuine questions of fact or credibility determinations that need to be made, summary judgment cannot be granted. *See Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014) ("It is black-letter law that in granting summary judgment a district court cannot resolve disputed questions of material fact . . ."). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

At the summary judgment stage, the court does not determine the veracity of the claims or weight of the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, a court merely determines whether there is or is not a genuine factual issue for trial. *Liberty Lobby*, 477 U.S. at 249. The inquiry is whether the evidence creates "sufficient disagreement to require submission to a jury." *Id.* at 242, 251-52. Courts must regard as true the opposing party's evidence, if supported by an affidavit or other evidentiary material. *Celotex,* 477 U.S. at 324. In fact, summary judgments have been reversed where "declarations set forth facts based on personal knowledge [that] give rise to a triable issue of fact." *Self-Realization Fellowship Church*, 206 F.3d at 1330; *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). A party "does not necessarily have to produce evidence in a form that would be admissible at trial for that evidence to be considered at the summary judgment stage. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

### 2.    Debtor's Contradictory Evidence Argument Was Already Rejected

Debtor again argues that MET's own records contradict the Sullivan Declaration, rendering it "false" or insufficient to defeat summary judgment. Brief at 8-10.[2] Debtor raised contradictory

---

[2] Debtor's own argument shows it is simply unhappy with the District Court's holding and is attempting to have this Court ignore the Order. Specifically, Debtor argues "[e]ven if this Bankruptcy Court is forced to accept into evidence Ms. Sullivan's testimony that 'MET never had

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

evidence as being insufficient to oppose summary judgment. (District Court Docket, Doc. 40-4 at 22). Indeed, the District Court found "no basis to conclude that Ms. Sullivan was not competent to provide the testimony she provided in her declaration," and "[w]ithout weighing the declaration or making any sort of credibility determination, [], it appears that Ms. Sullivan's declaration, even without the attached exhibits, contained factual statements – not conclusions – regarding the timing of the transfer of the payment (which was immediate) from Met's lawyers to the eventual recipient, and whether Met ever had access to the money (it didn't, only the law firm did)." Order at 9.

Yet Debtor argues again that "Ms. Sullivan did not personally testify" and was "actually testifying as to the contents of a writing to provide context for the next sentence of her declaration." Brief at 10, n. 42. In so arguing, Debtor asks this Court to ignore the District Court's direct ruling that "there is no basis to conclude that Ms. Sullivan was not competent to provide the testimony she provided in her declaration" and ignore the Declaration entirely. The Debtor's attempt to re-characterize her testimony is a transparent attempt to bypass the District Court's finding that her personal knowledge creates a "triable issue of fact."

Moreover, by requesting this Court to interpret the documentary evidence in its favor while ignoring the Sullivan Declaration, the Debtor improperly asks this Court to perform a weighing of evidence that is explicitly prohibited on summary judgment. *Liberty Lobby*, 477 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

### 3.    Whether MET Exercised Dominion is a Disputed Question of Fact

Debtor again argues that as a matter of law, MET exercised dominion over the funds, and thus, was the initial transferee. Brief at 18. This exact argument was raised on appeal to the District Court (District Court Docket, Doc. 40-4 at 27:1-29:6) and was rejected when the grant of summary judgment was reversed. Order at 10. Debtor's request that this Court now grant summary judgment

any control or dominion over the $100,000' as a statement of fact by a percipient witness instead of a legal conclusion by the party's attorney," "MET's own documentary evidence contradicts Ms. Sullivan's statement. . . ." Brief at 10.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

based on the same evidence is not only a request to contravene the appellate mandate but also is wholly improper.

Even if this Court was inclined to revisit the same issue, there are disputed questions of fact concerning MET's status. In the Ninth Circuit, an "initial transferee" must satisfy the "dominion test," meaning the entity has legal authority over the money and to use the funds for its own purposes. *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 548-49 (9th Cir. 1991). As the Ninth Circuit emphasized, an entity does not have dominion until it is "'free to invest the whole [amount] in lottery tickets or uranium stocks.'" *Id.* at 549 (quoting *Bonded Fin. Servs. v. European Am. Bank.*, 838 F.2d 890, 894 (7th Cir. 1988)). The inquiry focuses on whether an entity had legal authority over the money and the right to use the money however it wished. *Diamond v. Empire Partners, Inc.* (*In re Empire Land, LLC*), No. 6:09-ap-01235-MH, 2016 Bankr. LEXIS 1088, at *15 (Bankr. C.D. Cal. 2016) (citing *Incomnet, Inc.*, 463 F.3d at 1069); *In re Bullion Reserve of North America*, 922 F.2d at 549; *Walsh v. Townsquare Assocs.* (*In re Montross*), 209 B.R. 943, 948 (9th Cir. BAP 1997); *Schoenmann v. BCCI Constr. Co.*, No. NC-07-1128, 2007 Bankr. LEXIS 4931, at *10 (BAP 9th Cir. Nov. 7, 2007). "The dominion test focuses on whether the recipient of funds has legal title to them and the ability to use them as he sees fit." *Incomnet*, 463 F.3d at 1071; *Schoenmann*, 2007 Bankr. LEXIS 4931, at *12 n. 9. Indeed:

> The focus on 'dominion' is useful for those unusual situations in which legal title to funds and the right to put those funds to use have been separated. There are two primary cases when this may occur: (1) when an entity has legal title as a formal matter, but legally does not have any discretion in the application of funds; and (2) when an entity does not possess legal title, but nevertheless has sufficient authority over the funds to direct their disbursement.

*Incomnet*, 463 F.3d at 1073-74.  At the outset, "[t]he use of the word 'transferee' necessarily implies that the party receives the property." *General Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.)* 185 B.R. 801, 809 (9th Cir. BAP 1995). In other words, receipt of the transferred property is a necessary element for that entity to be a transferee under Section 550(a). "Simply directing a transfer, i.e., such as by directing a debtor to transfer its funds, is not enough." *Id.* (quoting *Richardson v. FDIC (In re M. Blackburn Mitchell Inc.)*, 164 B.R. 117, 126 (Bankr. N.D. Cal. 1994)).

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

In any event, "[l]egal title is the starting point to the dominion inquiry, not an afterthought." *Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re Walldesign, Inc.)* 872 F.3d 954, 969 (9th Cir. 2017). Further, "[a]n entity without such dominion or control is deemed a 'conduit' which is merely a facilitator without sufficient control over the funds passing through its hands to be considered a transferee of the transfer." *Montross*, 209 B.R. at 948.

Here, Debtor's argument that MET exercised "dominion" because the Debtor believes that MET had the right to use the funds to pay the third-party funder fails under the weight of this evidence. Brief at 18. The record shows that the funds were sent directly to a law firm, and MET never had the ability to direct those funds for its own use. Specifically, the Sullivan Declaration confirms that MET never exercised control over the funds and that the law firm transferred the funds immediately to a third-party – not MET. AP Doc. 23 at ¶¶ 16-20. This creates a direct conflict with the Debtor's interpretation of the records. Because MET's "dominion" is a contested material fact, summary judgment must be denied.

### 4. Debtor's Subjective Intent Cannot Create "Dominion" Where MET Lacked Legal Title and Control

The Debtor argues that because it placed no "restrictions" on the funds when it wired them to the attorney escrow account, MET must be the initial transferee. Brief at 18. This argument fundamentally misunderstands the Ninth Circuit's dominion test and fails for two primary reasons.

First, under the Ninth Circuit standard, the relevant inquiry is whether the recipient (MET) – not the Debtor – had the legal authority use the money however it wished. *See Incomnet, Inc.*, 463 F.3d at 1069. What the Debtor knew or intended at the time it transferred the money is irrelevant to the question of whether MET actually acquired legal title or the discretion to spend the money on anything, including "lottery tickets or uranium stocks." *See In re Bullion Reserve*, 922 F.2d at 549. The Debtor cannot unilaterally create a transferee by its own subjective belief if the recipient never actually gains the legal right to control the assets.

Second, the funds were deposited into an attorney's escrow account—a classic example of a conduit. Under the pre-existing agreement between MET and the Legalist, those funds were already contractually "spoken for" the moment they were received. As the Sullivan Declaration

establishes, MET never had the power to intercept those funds or redirect those funds for its own purposes. An entity that merely facilitates a payment to a third party per a pre-existing contractual obligation does not exercise "dominion." *See In re Lucas Dallas, Inc.*, 185 B.R. at 809 (holding that "simply directing a transfer" is insufficient for dominion). The Debtor's interpretation of the escrow transfer directly conflicts with the facts set forth in the Sullivan Declaration regarding MET's total lack of access or control. Debtor's subjective belief that it was "paying MET" cannot override the objective reality that MET never possessed the funds nor the legal right to control them, and thus, was a mere conduit. At a minimum, this is a question of fact that cannot be resolved on summary judgment.

Debtor argues that summary judgment is warranted because the agreement with the Legalist was entered into on March 12, 2020, "MET had three days after receipt of the Transfer to exercise dominion and control over the funds." Brief at 10:10-14. This argument is not new. Debtor raised this same dominion and control theory before the District Court on appeal. District Court Docket, Doc. 40-4 at 28:15-23. The District Court nevertheless found the Sullivan Declaration raised genuine issues of material fact regarding both the timing of the Transfer and the degree of control MET exercised over the funds – it was immediate and none. Order at 9. Debtor cannot relitigate an issue already decided adversely to it on appeal by repackaging the same argument in a purportedly renewed motion for summary judgment. Put simply, the District Court has already rejected Debtor's attempt to establish dominion and control based solely on the timing of the Legalist agreement. That ruling is binding here and dispositive of Debtor's summary-judgment argument.

**5.        The Cases Relied on By Debtor Do Not Require a Different Outcome**

The Debtor's reliance on *Bonded Financial*, *Incomnet*, and *The Mortgage Store* is misplaced, as these cases reinforce the District Court's finding that triable issues of fact exist. Under the Ninth Circuit's strict dominion test, the critical inquiry is whether the recipient had the legal authority to manipulate the funds for its own purposes—a fact directly addressed and disputed by the Sullivan Declaration. In *Bonded Financial*, the Seventh Circuit held that a bank was not an initial transferee because it lacked the discretion to use the funds, whereas a party with dominion would have been "free to invest the whole $200,000 in lottery tickets or uranium stocks." *Bonded Fin.*

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

*Servs.*, 838 F.2d at 894. The Sullivan Declaration establishes that MET never had this freedom; it never touched the money, which was wired immediately by counsel to a third party and would have had no authority to do anything with it other than remit it to Legalist per its preexisting agreement with Legalist.

In *Incomnet*, the Ninth Circuit found a transferee had dominion because it held legal title and "discretionary authority" over the funds. 463 F.3d at 1073-75. The Ninth Circuit found USAC was a transferee and specifically noted "[a]s USAC conceded before the bankruptcy court, it holds legal title to the funds in the USF accounts." Here, the Sullivan Declaration provides evidence that MET never held title or access to the funds, creating a material dispute as to whether MET ever possessed the legal title or "discretionary authority" required by *Incomnet*.

In *Mano-Y&M Ltd. v. Field (In re Mortgage Store, Inc.)*, 773 F.3d 990, 996-97 (9th Cir. 2014), the Ninth Circuit held the debtor transferred funds to an attorney for distribution in satisfaction of the buyer's obligations but the buyer was not the initial transferee because it had no ability to manipulate the funds for its own accord. Specifically, the Ninth Circuit held "whether [the attorney] was acting on [the buyer's] behalf when he received the funds from [the debtor] and distributed them is irrelevant to whether [the buyer] had dominion. What matters is whether [the buyer] had the ability to manipulate the funds on his own accord" and "[t]he record shows [the buyer] did not." *Id.* at 997 (citing *In re Incomnet*, 463 F.3d at 1071-73). The Sullivan Declaration asserts that MET lacked this ability entirely.

In *Zazzali v. Goldsmith (In re DBSI Inc.)*, 593 B.R. 795 (Bankr. D. Idaho 2018), the alleged transferee (DBSI-TV) could not be the initial transferee because it "never received or held legal title to the funds" and had no bank account to possess them. The *Zazzali* court noted the funds were "committed to the closing agent" and could not be freely appropriated. 593 B.R. at 826. The Ninth Circuit affirmed the decision, confirming that an entity cannot acquire legal title if it has "no way of possessing the funds." *Goldsmith v. Zazzali as Trustee for Debtor's Jointly-Administered Chapter 11 Estates*, 814 F. App'x 279, 280 (9th Cir. 2020). This directly rebuts the Debtor's argument that its "unrestricted" wire transfer automatically made MET the transferee.

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

Whether MET had "dominion" over funds it never received is at best a question of fact that requires credibility determinations that cannot be resolved on summary judgment.

### 6.   The Debtor's "Entity for Whose Benefit" Theory is Procedurally Barred and Legally Flawed

The Debtor's eleventh-hour alternative argument—that even "[i]f MET is somehow not the 'initial transferee,' MET is still an entity for whose benefit the transfer was made," is equally unsuited for summary judgment. Brief at 19.  Specifically, Debtor argues that MET was not a "mere conduit" because Hologenix had no contractual obligation to pay Legalist, and MET received the funds without any restrictions from Hologenix on their use. *Id.* at 21. This again is a regurgitation of the same argument it made in opposition to the appeal (District Court Docket, Doc. 40-4 at 28:1-14), which the District Court already rejected. Because the "benefit" theory relies on the same disputed facts regarding MET's legal relationship to the funds and the intent of the transfer, it remains a contested issue that cannot be decided as a matter of law.

Notwithstanding, if this Court was inclined to consider this argument here, it also fails under the weight of the evidence. Section 550(a) of the Bankruptcy Code permits a debtor to recover the payments from both "the initial transferee of the transfer or the entity for whose benefit such transfer was made." In determining "the entity for whose benefit such transfer was made," the court must "look through the form of the transaction and determine which entity actually benefitted from the transfer." *Terry v. Meredith (In re Stephen S. Meredith, CPA, P.C.)*, 527 F.3d 372, 376 (4th Cir. 2008). An entity is only a beneficiary under § 550(a)(1) if it receives a direct, actual, and intended benefit from the transfer. *In re Bullion Reserve of N. Am.*, 922 F.2d 544.

In its Brief, the Debtor misconstrues *Merrill v. Dietz (In re Universal Clearing House Co.)*, 62 B.R. 118 (D. Utah 1986), which is illustrative of an instance in which a court determined that a transfer was decidedly made for the "benefit" of a recipient of funds. Brief at 19. In that case (from the Tenth Circuit), the funds were paid via check where the memorandum explicitly notated "for Thomas Dietz." 62 B.R. at 127.  The trustee also argued that the transfer of funds was used for a retainer to form a reinsurance company at the behest of Dietz. *Id.* The court sided with the trustee, determining that the facts at hand (primarily the notation as referenced above) "support a finding

-15-

that Dietz fell within subsection [550](a)(1) as the entity for whose benefit the transfer was intended." 62 B.R. at 128. The facts at hand are not so clear-cut. In contrast, the transfer was made to MET's counsel for the purpose of effectuating payment to Legalist as required by MET's agreement with Legalist. The funds were neither held by MET nor made out to MET as payee or recipient of those funds, but rather for the benefit of Legalist.

*Dietz* further explained:

> This phraseology [regarding the 'benefit' of an entity] implies a requirement that, in transferring the avoided funds, the debtor must have been motivated by an intent to benefit the individual or entity from whom the trustee seeks to recover. It is not enough that the entity benefits from the transfer; the transfer must have been made for his benefit.

*In re Universal Clearing House Co.*, 62 B.R. at 128, n.12.

The Debtor similarly misapplies *Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*, 892 F.2d 26, 29 (4th Cir. 1989) by failing to distinguish between an entity that incidentally benefits and one for whose benefit a transfer is intended, a distinction requiring specific intent. Unlike the guarantors in *In re Columbia Data Prods., Inc.*, the payment in this case was a pass-through to a third party, creating a factual dispute that precludes summary judgment on Section 550(a)(1) liability. Further analysis of the "benefit" inquiry and the distinction between conduits and beneficiaries is required and cannot be decided on summary judgment.

The Debtor impermissibly and desperately attempts to collapse "initial transferee" and "entity for whose benefit such transfer was made" into a single party — MET, which never got a penny and never had control over the funds. There is no basis in law for MET to return the funds when it was not the entity for which the benefit of the funds was made. Moreover, the Debtor's argument attempts to perform a legal impossibility by labeling MET as both the "initial transferee" and the "entity for whose benefit" the transfer was made. Under Ninth Circuit law, these are mutually exclusive categories; an entity cannot be a transferee and the entity for whose benefit a transfer was made. *See In re Bullion Reserve of N. Am.*, 922 F.2d at 547.

-16-

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

The structure of Section 550(a)(1) separates the person who receives the money from the person who benefits from that payment. The Debtor cannot "double up" on MET to manufacture liability. If, as the evidence shows, MET was a "mere conduit" that never exercised dominion or control over the funds – as the Sullivan Declaration asserts – it cannot then be shoehorned into the "beneficiary" category simply because the funds passed through to a third party. To hold otherwise would allow a Debtor to bypass the "dominion" test entirely by simply re-labeling a conduit as a beneficiary. Because the intent and the "actual" beneficiary are disputed on this record, the Debtor is not entitled to judgment as a matter of law.

### C. The Transfer is Protected as a Contemporaneous Exchange for New Value

Even if the Debtor could establish the elements of a preference, the Initial Payment is protected because it was intended to be, and was in fact, a contemporaneous exchange for new value. An argument also raised on appeal to the District Court (District Court Docket, Doc. 40-4 at 17:3-20:4) and ignored by the Debtor here.

The first prong of the 547(c)(1) defense requires that both parties intended the transfer to be a contemporaneous exchange for new value. The Settlement Agreement explicitly structured the Initial Payment to be made within one business day of execution. This tight timeline demonstrates the parties' mutual intent that the payment be tied directly to the execution of the release and the cessation of the Pre-Petition Case. "New value" is defined broadly to include money, goods, services, or the release of property interests. 11 U.S.C. § 547(c). By executing the Settlement Agreement and accepting the Initial Payment, MET provided the Debtor with the immediate release of its claims in the Pre-Petition Case and the lifting of any associated litigation risks.

The second prong requires that the exchange be substantially contemporaneous in fact. The Debtor wired the $100,000 on March 9, 2020, just days after the March 6 execution of the Settlement Agreement. The Sullivan Declaration establishes that this transfer was "immediate." In the Ninth Circuit, such a short interval between the provision of value (the release/settlement) and the payment (the wire) satisfies the "substantially contemporaneous" requirement.

### IV. CONCLUSION

The District Court's reversal was not a mere suggestion; it was a binding determination that

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

-17-

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

the Sullivan Declaration creates a triable issue of fact as to whether MET ever exercised the "dominion" required to be an initial transferee. By filing this renewed Motion for Summary Judgment on the exact same record, the Debtor asks this Court to ignore the law of the case and the appellate mandate.

Even if this Court considered the improper request to ignore the appellate mandate, the evidence—regarded in the light most favorable to the non-moving party—shows that MET was a mere conduit that never possessed the legal authority to "buy lottery tickets" or otherwise manipulate the funds. Furthermore, the Debtor's attempts to bypass the "dominion test" by re-labeling MET as a "beneficiary" fail as a matter of law, as the two categories are mutually exclusive in the Ninth Circuit. Because the intent of the parties, the timing of the transfer, and the ultimate beneficiary are all inherently factual disputes, this case is fundamentally unsuited for summary adjudication.

DATED: March 31, 2026

WHITE AND WILLIAMS LLP

By: _____
NICOLE A. SULLIVAN (pro hac vice)
THOMAS E. BUTLER (pro hac vice)
Attorneys for Creditor Multiple Energy
Technologies, LLC

DATED: March 31, 2026

ELKINS KALT WEINTRAUB REUBEN
GARTSIDE LLP

By: _____
ROYE ZUR
LAUREN GANS
Attorneys for Creditor Multiple Energy
Technologies, LLC

-18-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10345 Olympic Boulevard, Los Angeles, California 90064.

A true and correct copy of the foregoing documents entitled (*specify*): **MULTIPLE ENERGY TECHNOLOGIES, LLC'S RESPONSE TO DEBTOR'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT AFTER REMAND FROM THE DISTRICT COURT** will be served or were served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 31, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **Thomas E Butler    butlert@whiteandwilliams.com, sullivann@whiteandwilliams.com;millnamowm@whiteandwilliams.com;panchavatis@whiteandwilliams.com**
- **Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com**
- **Oscar Estrada    oestrada@ttc.lacounty.gov**
- **Theodore W Frank    frank@psmlawyers.com, knarfdet@gmail.com;navarro@parkermillsllp.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com**
- **Brian T Harvey    bharvey@buchalter.com, docket@buchalter.com;dbodkin@buchalter.com;pjolley@buchalter.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Raffi Khatchadourian    raffi@hemar-rousso.com**
- **Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Ron Maroko    ron.maroko@usdoj.gov**
- **Juliet Y. Oh    jyo@lnbyg.com, jyo@lnbyb.com**
- **Carmela Pagay    ctp@lnbyg.com**
- **Yvonne Ramirez-Browning    yvonne@browninglawgroup.com, veronica@browninglawgroup.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **Gregory M Salvato    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com**
- **James R Selth    jselth@yahoo.com, jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com**
- **Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Randye B Soref    rsoref@polsinelli.com, ccripe@polsinelli.com;ladocketing@polsinelli.com**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                      **F 9013-3.1.PROOF.SERVICE**

- **Heidi J Sorvino     sorvinoh@whiteandwilliams.com,**
  **millnamowm@whiteandwilliams.com;sullivann@whiteandwilliams.com;panchavatis@whiteandw**
  **illiams.com;butlert@whiteandwilliams.com**
- **Alan Stomel     alan.stomel@gmail.com, astomel@yahoo.com**
- **Annie Y Stoops     annie.stoops@afslaw.com, yvonne.li@afslaw.com**
- **Nicole Sullivan     sullivann@whiteandwilliams.com,**
  **vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **Derrick Talerico     dtalerico@wztslaw.com,**
  **maraki@wztlfirm.com,sfritz@wztlfirm.com,admin@wztlfirm.com**
- **United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov**
- **Larry D Webb     Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**
- **David Wood     dwood@marshackhays.com,**
  **dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alina**
  **res@ecf.courtdrive.com**
- **Roye Zur     rzur@elkinskalt.com,**
  **lwageman@elkinskalt.com;1648609420@filings.docketbird.com;rzur@ecf.courtdrive.com;lmasse**
  **@elkinskalt.com**

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **March 31, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 31, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 31, 2026 | Lisa Masse | /s/ Lisa Masse |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.