RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM, JPF@LNBYG.COM,

Attorneys for Plaintiff
Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>HOLOGENIX, LLC,<br><br>      Debtor and Debtor in Possession.<br><br>---<br><br>HOLOGENIX, LLC,<br><br>      Plaintiff,<br>v.<br><br>MULTIPLE ENERGY TECHNOLOGIES, LLC,<br><br>      Defendant. | ) Case No.: 2:20-bk-13849-BR<br>)<br>) Chapter 11 Case<br>) Subchapter V<br>)<br>) Adversary Case No. 2:22-ap-01098-BR<br>)<br>)<br>) **DEBTOR'S REPLY IN SUPPORT OF SUMMARY JUDGMENT AFTER REMAND FROM THE DISTRICT COURT**<br>)<br>) <u>Hearing</u>:<br>) Date:  May 26, 2026<br>) Time:  10:00 a.m.<br>) Place:  Courtroom 1668<br>)          255 East Temple Street<br>)          Los Angeles, CA 90012<br>) |

1

# TABLE OF CONTENTS

I.  THE COURT IS AUTHORIZED TO ENTER SUMMARY JUDGMENT................ 2

II. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
    DEBTOR AND AGAINST MET ON DEBTOR'S CLAIM FOR AVOIDANCE
    AND RECOVERY OF THE $100,000 TRANSFER ...................................... 3

    A.  LEGAL STANDARDS ................................................................. 4

    B.  THE TRANSFER WAS MADE TO OR FOR THE BENEFIT OF
        MET, AND MET WAS THE INITIAL TRANSFEREE ................................. 5

    C.  THE COURT SHOULD SCRUTINIZE MET'S
        MISREPRESENTATIONS.................................................................. 8

    D.  THE COURT SHOULD RULE IN DEBTOR'S FAVOR BASED
        ON THE INDISPUTABLE FACTS AND LAW................................................ 9

III. EVEN IF MET WAS NOT THE INITIAL TRANSFEREE, IT WAS AN
     ENTITY FOR WHOSE BENEFIT THE TRANSFER WAS MADE........................ 10

IV. MET'S ARGUMENT THAT IT HAS A CONTEMPORANEOUS NEW VALUE
    DEFENSE IS FRIVOLOUS................................................................ 12

V.  CONCLUSION ............................................................................. 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).............................................................................................................4, 7

*Danning v. Miller* (*In re Bullion Reserve of N. Am*),
    922 F.2d 544 (9th Cir. 1991) ........................................................................................9, 11, 12

*Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc.* (*In re
    Walldesign, Inc.*),
    872 F.3d 954 (9th Cir. 2017) ...................................................................................................10

*Lowry v. Sec. Pac. Bus. Credit, Inc.* (*In re Columbia Data Prods., Inc.*),
    892 F.2d 26 (4th Cir. 1989) .....................................................................................................11

*Merrill v. Dietz* (*In re Universal Clearing House Co.*),
    62 B.R. 118 (D. Utah 1986)......................................................................................................11

*Scott v. Harris*,
    550 U.S. 372 (2007)..........................................................................................................4, 5, 7

*Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*,
    322 F.3d 1039 (9th Cir. 2003) ...................................................................................................4

**Federal Statutes**

11 U.S.C.
    § 547(a)(2) ...............................................................................................................................13
    § 547(c)(1) ...............................................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................................................4

Plaintiff Hologenix, LLC ("Debtor"), hereby respectfully submits its reply to the response (the "Response") [AP ECF 105] filed by Multiple Energy Technologies, LLC ("MET"), to Debtor's brief (the "Brief") [AP ECF 104] in support of this Court entering summary judgment against MET.  For the reasons given in the Brief and in this Reply, as expressly authorized by the Ninth Circuit, after giving due weight to the testimony of Nicole Sullivan in her declaration and exhibits [AP ECF 23 and 29] filed in opposition to Debtor's motion for summary judgment [AP ECF 13], the Court should grant Debtor's request for entry of summary judgment against MET.

## I.    THE COURT IS AUTHORIZED TO ENTER SUMMARY JUDGMENT

MET asserts that the District Court definitively determined that Ms. Sullivan's declaration created a genuine issue of material fact, and that this Court *must* proceed to trial and cannot entertain a request for summary judgment on the existing record.  MET asserts that this is so because of the "law of the case" doctrine.  Ironically, MET ignores what the Ninth Circuit Court of Appeals said in its order (the "Dismissal Order"), which is the definitive law of the case.

In the Dismissal Order, the Ninth Circuit observed that the District Court reversed on the basis that this Court "failed to give appropriate weight to a piece of evidence on summary judgment in deciding that the preferential transfer could be avoided."[1]  The Ninth Circuit expressly said:

> **The bankruptcy court could still grant summary judgment after giving appropriate weight to the piece of evidence that the district court required the bankruptcy court to consider**, or the bankruptcy court could decline to grant summary judgment, leaving the parties with unsettled obligations and rights until the end of trial.[2]

Not surprisingly, MET never mentions this aspect of the Dismissal Order.

---

[1] Dismissal Order, p. 2.

[2] Dismissal Order, p. 3 (emphasis added).

2

Instead, MET argues that Debtor's Brief "is a transparent attempt to bypass the appellate mandate and ignore the law of the case."[3]  MET also argues that "the 'law of the case' doctrine compels the denial of" Debtor's request for summary judgment.[4]  The exact opposite is true.  The law of the case, as established by the Ninth Circuit, is that this Court may grant summary judgment if, after considering and giving proper weight to Ms. Sullivan's testimony, it is appropriate to do so.

**II.      THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEBTOR AND AGAINST MET ON DEBTOR'S CLAIM FOR AVOIDANCE AND RECOVERY OF THE $100,000 TRANSFER**

At the original hearing on Debtor's motion for summary judgment, when discussing whether the Transfer was made to or for the benefit of MET, MET's counsel told the Court that White & Williams had no ability to accept the payment in MET's name.  The Court responded by saying, among other things, "there's no evidence of that.  A statement of counsel is not evidence, as far as I'm concerned, without the papers to show it."[5]

The District Court noted that the Court did not give Ms. Sullivan's testimony any weight because exhibits were not attached.  The District Court ruled that Ms. Sullivan, having testified that she had personal knowledge of the facts set forth in her declaration, was competent to testify as to the factual statements therein.

As noted above, in the Dismissal Order, the Ninth Circuit observed that the Judgment was reversed because the District Court concluded that this Court did not give appropriate weight to the factual statements in Ms. Sullivan's declaration.  Following the Ninth Circuit's

---

[3] Response, 1:12-13.

[4] Response, 1:16-18.  Instead of addressing the Dismissal Order, MET focuses on several unpublished district court cases and certain aspects of the District Court's Decision.  Debtor disagrees with MET's characterization of certain aspects of the District Court's Decision, but does not waste time addressing them here because, among other things, the Dismissal Order resolves the question.

[5] The Court also stated earlier at the hearing that it gave no weight to certain conclusions – presumably referring to legal conclusions – in Ms. Sullivan's declaration that the Court did not consider to be evidence.

guidance in the Dismissal Order, the Court should consider Ms. Sullivan's testimony and afford it appropriate weight in accordance with U.S. Supreme Court and Ninth Circuit authority, and re-enter summary judgment in Debtor's favor.

### A.    LEGAL STANDARDS

Entry of summary judgment in favor of a moving party is appropriate if there are no ***genuine*** issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[T]he requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248 (emphasis in original). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* If evidence submitted by a non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. Further, where the only disputes relate to the legal significance of undisputed facts, "the controversy collapses into a question of law suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

Like MET in this case, sometimes non-moving parties try to defeat summary judgment by submitting false declaration testimony that no jury would believe. The U.S. Supreme Court has an answer for this. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, when opposing a motion for summary judgment, the plaintiff provided a version of events that was clearly contradicted by videotape evidence of what happened. *Id.* at 378. The Supreme Court wrote that the plaintiff's version of events was sufficiently discredited by the record that no reasonable jury could have believed

4

him. *Id.* at 380. After applying the indisputable facts to the applicable law, the Supreme Court ruled that the defendant was entitled to summary judgment. *Id.* at 386.

## B. THE TRANSFER WAS MADE TO OR FOR THE BENEFIT OF MET, AND MET WAS THE INITIAL TRANSFEREE

In an attempt to defeat summary judgment, MET submitted a declaration of its attorney, Nicole Sullivan. Pursuant to the District Court's and the Ninth Circuit's rulings, the Court must accept that Ms. Sullivan is competent to testify as to the facts stated therein. The Court should review Ms. Sullivan's testimony in that light, and still grant summary judgment in Debtor's favor.

The Court must carefully examine what Ms. Sullivan actually says in her declaration, which appears to have been crafted in a way that makes it look like Ms. Sullivan is testifying to things to which she is not actually testifying:

- In the first sentence of paragraph 16, Ms. Sullivan testified that MET made a particular admission in one of its discovery responses, which Debtor had already submitted to the Court.[6] Ms. Sullivan did not testify from her own personal knowledge as to any material fact.

- In the second sentence of paragraph 16, Ms. Sullivan testified from her own personal knowledge that the $100,000 received from Debtor was transferred to Legalist "pursuant to that certain agreement [(the "MET-Legalist Agreement)] by and between MET and" Legalist.

- In paragraph 17, Ms. Sullivan authenticated the MET-Legalist Agreement, a heavily redacted version of which was attached as Exhibit A. The MET-Legalist Agreement is dated March 12, 2020 – three days *after* Debtor paid MET.

---

[6] Ms. Sullivant testified, "In its Discovery Responses, MET admitted 'only that MET received a single payment of $100,000 via wire on or about March 9, 2020, pursuant to a certain Settlement Agreement and the payment was almost immediately transferred to a third-party transferee.'"

- In <u>paragraph 18</u>, Ms. Sullivan authenticated screenshots which were attached as Exhibit B. Exhibit B shows that Debtor paid $100,000 into MET's attorney's client trust account (the "<u>Trust Account</u>") on March 9, 2020. Exhibit B also shows that $100,000 was paid from the Trust Account to Legalist on March 16, 2020. The exhibits speak for themselves, but Ms. Sullivan falsely characterized the screenshots as showing the "immediate transfer" of the $100,000 to Legalist. Notably, Ms. Sullivan did *not* testify from her own personal knowledge that the funds were immediately transferred to Legalist; she was merely (but inaccurately) describing Exhibit B.

- In <u>paragraph 19</u>, Ms. Sullivan testified that MET "never had any control or dominion over the $100,000 that White and Williams LLP received from [Debtor] pursuant to the parties' settlement agreement." The first part of this testimony is a classic legal conclusion. The second part is an admission that Debtor made the $100,000 payment pursuant to the Settlement Agreement.

The question before the Court is whether these four paragraphs of Ms. Sullivan's declaration raise a ***genuine*** issue of material fact – i.e., whether they could lead a reasonable jury to return a verdict for MET.

The answer is no. (1) Ms. Sullivan's Exhibit B shows that Debtor paid $100,000 into the Trust Account on March 9, 2020. (2) Ms. Sullivan's testimony explains that this payment was made pursuant to the Settlement Agreement. (3) Ms. Sullivan's Exhibit A shows that MET and Legalist (and not Debtor) entered into the MET-Legalist Agreement at least three days later, on March 12, 2020. (4) Ms. Sullivan's Exhibit B shows that $100,000 was transferred from the Trust Account to Legalist four days after that, on March 16, 2020. (5) Ms. Sullivan's testimony explains that this transfer was made pursuant to the MET-Legalist Agreement.

Even if Ms. Sullivan testified that the $100,000 was transferred "almost immediately" or "immediately" to Legalist,[7] no reasonable jury would believe the testimony.  The undisputed fact, evidenced by Ms. Sullivan's own Exhibit B, is that the $100,000 was transferred to Legalist a full week after Debtor paid MET.  No jury could conclude that the funds were paid to Legalist immediately upon receipt of the funds from Debtor.

Similarly, even if one views Ms. Sullivan's testimony that MET "never had any control or dominion over the" funds as a factual statement instead of a legal conclusion, no reasonable jury would believe the testimony.  Even if the MET-Legalist Agreement stripped MET of "control or dominion" over the funds, Ms. Sullivan's own testimony reveals that the MET-Legalist Agreement did not exist until at least three days *after* Debtor paid the $100,000.  The MET-Legalist Agreement itself proves that MET had control and dominion over the funds.

In the face of indisputable evidence that a street light was green, a desperate defendant cannot defeat summary judgment by submitting a declaration claiming that the light was red.  In *Scott* – which MET completely ignores in the Response[8] – it was a videotape that clearly contradicted the plaintiff's version of events.  In this case, it is Ms. Sullivan's own exhibits.[9]

///

///

///

///

///

---

[7] Again, perhaps by design, Ms. Sullivan never actually testified of her own personal knowledge that the transfer from the Trust Account to Legalist was immediately made.

[8] MET instead cites *Liberty Lobby* for the proposition that courts are "explicitly prohibited" from weighing evidence on summary judgment.  Response, 10:15-19.  Actually, in *Liberty Lobby*, the Supreme Court said that the summary judgment standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Liberty Lobby*, 477 U.S. at 247-48.  Therefore, *Liberty Lobby* contradicts MET's argument.

[9] Notably, MET makes no effort to address the fact that Ms. Sullivan's testimony regarding the immediacy of the payment to Legalist and MET's dominion over the funds is wholly incompatible with her own exhibits.  MET only argues that Debtor's arguments were rejected by the District Court, although the District Court did not address the inconsistencies.

## C. THE COURT SHOULD SCRUTINIZE MET'S MISREPRESENTATIONS

The Court should not only carefully examine Ms. Sullivan's testimony, it should also carefully examine factual representations made by MET in the Response to determine whether MET is falsely representing the facts of the case.

At the bottom of page 2 of the Response, MET represents the following:

> In January 2020, MET executed an agreement with [Legalist], under which Legalist agreed to provide funding to MET for the purpose of continuing the litigation against the Debtor. In exchange, MET agreed that, if it were successful in the District Court Case, it would immediately pay to Legalist the first $100,000.00 received either through a judgment against or through a settlement with the Debtor. AP Doc. 23, ¶ 16-18. On or about March 9, 2020, the Debtor sent the Initial Payment in the amount of $100,000.00 to MET's counsel via wire transfer pursuant to the terms of the Settlement Agreement. *Id.* at ¶ 18. This Initial Payment was never directly received by MET. *Id.* at ¶ 19. Pursuant to the Settlement Agreement, MET's counsel transferred the Initial Payment to Legalist via wire transfer, given that it was the first $100,000.00 received in the Pre-Petition Case. *Id.* at ¶¶ 16-18; AP Doc. 22, ¶¶ 10-13.

*First*, notably, the first sentence is not supported by any citation to the record. That is because this statement is not supported by any evidence in the record. Ms. Sullivan did not provide any testimony regarding a January 2020 agreement between MET and Legalist, or the contents thereof.

*Second*, in the second sentence, MET hopes to lead the Court to believe that, in the alleged January 2020 agreement, MET agreed to immediately pay Legalist the first $100,000 received from Debtor. MET cites to paragraphs 16 through 18 of Ms. Sullivan's declaration. However, Ms. Sullivan did not offer any testimony regarding the contents of the alleged January 2020 agreement. Moreover, *MET's representation is contradicted by Ms. Sullivan's own testimony*. Ms. Sullivan clearly testified that the payment by MET to Legalist was made pursuant to the MET-Legalist Agreement dated March 12, 2020, not an earlier agreement. And

the MET-Legalist Agreement itself (Exhibit A) reflects that it was this agreement in which MET agreed to pay the $100,000 to Legalist.[10]

*Third*, in the last sentence, MET represents that its counsel transferred $100,000 to Legalist *pursuant to the Settlement Agreement*.  This is either a typographical error or a deliberately false statement.[11]  The Settlement Agreement said nothing about what MET would or could do with the $100,000, and Ms. Sullivan's testimony (and Exhibit A) shows that the $100,000 was paid to Legalist pursuant to the MET-Legalist Agreement, not the Settlement Agreement.

## D. THE COURT SHOULD RULE IN DEBTOR'S FAVOR BASED ON THE INDISPUTABLE FACTS AND LAW

Applying the indisputable and undisputed facts to the law is straightforward.  By virtue of the Settlement Agreement, MET was a creditor.  Under the Settlement Agreement, Debtor was required to pay MET $100,000.  Debtor paid MET $100,000 by wiring the funds into the Trust Account maintained by MET's own attorney.  The $100,000 payment reduced the amount Debtor owed MET under the Settlement Agreement by $100,000.  MET then entered into the MET- Legalist Agreement with Legalist and agreed to pay the $100,000 to Legalist.

At one point, MET argues that what Debtor knew or intended when it paid MET is irrelevant to the question of whether MET actually acquired legal title or the ability to spend the funds.[12]  MET cites *Danning v. Miller* (*In re Bullion Reserve of N. Am*), 922 F.2d 544 (9th Cir. 1991), in support of this proposition, but the case does not contain such a broad statement. Whether Debtor placed any restrictions on MET's use of the funds is clearly relevant.  *See*

---

[10] Page 2 is not the only place MET misrepresents Ms. Sullivan's testimony in this regard. *See* Response, 12:27-13:2 ("Under the pre-existing agreement between MET and the Legalist, those funds were already contractually 'spoken for' the moment they were received.").

[11] MET made the same inaccurate statement in its Ninth Circuit brief, and Debtor pointed out the inaccuracy in its reply brief.  Yet MET persists in making the misrepresentation.

[12] Response, 12:19-25.

9

*Incomnet*, 463 F.3d at 1075 (taking into account that transferee received funds from debtor without any restrictions from debtor on their use).

MET continues to claim that MET never had the ability to direct the $100,000 for its own use.[13]  MET even continues to claim that MET's attorney immediately transferred the funds to Legalist.[14]  MET's own evidence proves otherwise.  Debtor paid MET; MET's attorney received the money from Debtor; MET then entered into an agreement with Legalist to pay the money to Legalist; and the money was paid to Legalist pursuant to the MET-Legalist Agreement a full week after Debtor paid MET.  MET's own documentary evidence shows that the street light was green, yet MET stubbornly insists that it was red.  As a matter law, MET was the initial transferee of the Transfer, and the Court should rule accordingly.

### III.    EVEN IF MET WAS NOT THE INITIAL TRANSFEREE, IT WAS AN ENTITY FOR WHOSE BENEFIT THE TRANSFER WAS MADE

As explained in the Brief, even if MET is not considered to be the initial transferee, it is an entity for whose benefit the transfer was made.  Either way, MET is strictly liable to Debtor under section 550(a).  *See Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re Walldesign, Inc.)*, 872 F.3d 954, 965 (9th Cir. 2017) (section 550 imposes strict liability on both the initial transferee and any other beneficiaries of the avoided transfer).

The evidence indisputably shows that MET was an entity for whose benefit the Transfer was made.  First, the transfer to MET was a partial payment of Debtor's debt to MET, made pursuant to the Settlement Agreement.  It seems axiomatic that MET benefitted from receiving payment on account of its claim, which is why its claim was reduced by $100,000.  Second, if we adopt the fiction that Debtor was paying Legalist, the payment to Legalist

---

[13] Response, 12:8-9.

[14] *See* Response, 12:10-11 ("Sullivan Declaration confirms that . . . the law firm transferred the funds immediately to a third-party"), 14:2 (funds were "wired immediately by counsel to a third party").

pursuant to the MET-Legalist Agreement satisfied MET's obligation to Legalist.  Accordingly, even if MET was not the "initial transferee" it is still strictly liable under section 550(a)(1).

In the Response, MET claims that "the transfer was made to MET's counsel for the purpose of effectuating payment to Legalist as required by MET's agreement with Legalist."[15] This is false; the Transfer was made to satisfy Debtor's payment obligation under the Settlement Agreement.  But if MET's version of events is correct, *MET actually is admitting that the Transfer was made for MET's benefit because it satisfied MET's obligation to pay $100,000 to Legalist*.[16]  MET cannot take the position that the transfer was made to Legalist to satisfy MET's obligation to Legalist, and yet still claim that it was not made for MET's benefit. Under applicable legal authorities such as *Merrill v. Dietz* (*In re Universal Clearing House Co.*), 62 B.R. 118 (D. Utah 1986), and *Lowry v. Sec. Pac. Bus. Credit, Inc.* (*In re Columbia Data Prods., Inc.*), 892 F.2d 26, 29 (4th Cir. 1989) ("entity for whose benefit such transfer was made" includes guarantors or parties that have obligations to the initial transferee), MET is liable under section 550(a).

In the Response, MET cites to *Bullion Reserve* for the proposition that "[a]n entity is only a beneficiary under § 550(a)(1) if it receives a direct, actual, and intended benefit from the transfer."[17]  *Bullion Reserve* is a real case, but one must question whether MET's citation is an A.I. hallucination.  The words "direct," "intend" and "intended" do not appear anywhere in the decision.  The words "actual" and "actually" appear in the decision, but not in any way that supports MET's legal proposition.  Indeed, if anything, the Ninth Circuit said the exact opposite when it pointed out that "courts have found that an entity need not actually benefit, so long as the transfer was *made* for his benefit."  *Bullion Reserve*, 922 F.2d at 547 (emphasis in original).

---

[15] Response, 16:2-4.

[16] There is no evidence that Debtor knew about MET's agreement with Legalist (it did not), much less that Debtor was transferring $100,000 to MET so it could then be paid to Legalist.

[17] Response, 15:20-21.

MET also mis-cites *Bullion Reserve* for the proposition that an "initial transferee" and an "entity for whose benefit such transfer was made" cannot be the same. MET's argument is illogical, since most initial transferees are the ones meant to benefit from transfers made to them. But according to MET, citing page 547 of *Bullion Reserve*, "Under Ninth Circuit law, these are mutually exclusive categories; an entity cannot be a transferee and the entity for whose benefit a transfer was made."[18] That is not, of course, what the Ninth Circuit said. To the extent it said anything on this subject, the court simply said that if Party 1 is the initial transferee, Party 2 can be liable under section 550(a) only if it is a party for whose benefit the transfer was made. *See Bullion Reserve*, 922 F.2d at 547.

The analysis in this case is simple. Debtor paid $100,000 to MET pursuant to the Settlement Agreement; MET was both the initial transferee and an entity for whose benefit the payment was made. But if the transfer was made "for the purpose of effectuating payment to Legalist as required by MET's agreement with Legalist," as MET claims in the Response, the payment was made for MET's benefit even if it was not the initial transferee.

## IV.   MET'S ARGUMENT THAT IT HAS A CONTEMPORANEOUS NEW VALUE DEFENSE IS FRIVOLOUS

At the end of the Response, MET argues that the Transfer cannot be avoided because MET has a contemporaneous new value defense under section 547(c)(1). MET's argument is frivolous.

A trustee (or in this case, Debtor) may not avoid a transfer to the extent that the transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange. 11 U.S.C. § 547(c)(1). The transfer being avoided is the payment of $100,000 by Debtor to MET pursuant to the Settlement Agreement. According to MET, "[b]y executing the Settlement Agreement and accepting the Initial

---

[18] Response, 16:26:28.

Payment, MET provided the Debtor with the immediate release of its claims in the Pre-Petition Case and the lifting of any associated litigation risks."[19]

The frivolity of MET's legal position is evident from the context of the statute. Since a debtor's payment to a creditor necessarily involves a release of liability, virtually every payment by a debtor to a creditor would qualify for a contemporaneous new value defense. This obviously is not the law.

To manufacture its argument, MET misrepresents the definition of "new value" in section 547. According to MET, "'New value' is defined broadly to include money, goods, services or the release of property interests."[20] Actually, the definition of "new value" is narrow, and this is what the statute actually says:

> In [section 547] . . . "new value" means money or money's worth in goods, services, or new credit, **or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law**, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2) (emphasis added). A cursory comparison of the Response and the statute reveals that MET is misrepresenting the law by cutting off the statute in mid-sentence to try to make it say something it does not actually say.

There is no dispute that MET did not give Debtor any money, goods or services in exchange for Debtor's payment of $100,000. There also is no dispute that MET did not return to Debtor any property previously transferred by Debtor to MET. Simply, the $100,000 Transfer satisfied Debtor's contractual obligation to pay MET $100,000.

MET also asserts that Debtor's payment of $100,000 in exchange for the release granted by MET in the Settlement Agreement was substantially contemporaneous. Here again, MET resorts to misrepresentations. First, MET conflates (1) the exchange that took place when Debtor and MET entered into the Settlement Agreement with (2) the exchange that took

---

[19] Response, 17:19-21.

[20] Response, 17:18-19.

place when Debtor paid MET $100,000. Second, according to MET, "[t]he Sullivan Declaration establishes that this transfer was 'immediate."[21] However, Ms. Sullivan's testimony related to the alleged immediacy of the transfer from MET to Legalist, not to the alleged immediacy of the transfer from Debtor to MET. Third, MET claims that in the Ninth Circuit the interval between the date on which the parties entered into the Settlement Agreement and the date on which Debtor paid MET $100,000 renders the exchange substantially contemporaneous. However, MET does not cite a single case.

A creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the non-avoidability of a transfer under section 547(c). MET has failed to satisfy this burden because, among other things, as a matter of law and fact, there was no substantially contemporaneous exchange of new value.

## V. CONCLUSION

For the reasons given in Debtor's original moving and reply papers, the Brief and this Reply, Debtor respectfully requests that the Court grant summary judgment in favor of Debtor and against MET, deny MET's cross-motion for summary judgment,[22] amend the Order to include augmented findings and conclusions that account for the declarations of Ms. Sullivan and the exhibits attached thereto, and grant such further relief as the Court deems just and proper.

Dated: April 21, 2026

HOLOGENIX, LLC

By:    /s/ John-Patrick M. Fritz
        Ron Bender
        John-Patrick M. Fritz
LEVENE, NEALE, BENDER, YOO
    & GOLUBCHIK L.L.P.
Attorneys for Plaintiff and Chapter 11 Debtor and
Debtor in Possession

---

[21] Response, 17:24.

[22] In its Response, MET has not requested entry of summary judgment in favor of MET.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

**A true and correct** copy of the foregoing document **Debtor's Reply In Support Of Summary Judgment After Remand From The District Court** be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 21, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On April 21, 2026 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the `document is filed.
☐  Service information continued on attached page

**Honorable Barry Russell**
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 21, 2026  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 21, 2026 | J. Klassi | /s/ J. Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1

- **Todd M Arnold    tma@lnbyg.com**
- **Ron Bender    rb@lnbyg.com**
- **John-Patrick M Fritz    jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com**
- **Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com**
- **Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com**
- **Kurt Ramlo    RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email**
- **Nicole Sullivan    sullivann@whiteandwilliams.com, vulpioa@whiteandwilliams.com,arthura@whiteandwilliams.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**
-