RON BENDER (State Bar No. 143364)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM, JPF@LNBYG.COM,

Attorneys for Plaintiff Hologenix, LLC

FILED & ENTERED

JUL 13 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-13849-BR |
| HOLOGENIX, LLC, | Chapter 11 (Subchapter V) |
| Debtor and Debtor in Possession. | |
| HOLOGENIX, LLC, | Adv. Proc. No. 2:22-ap-01098-BR |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND (3) STAYING JUDGMENT FOR A LIMITED TIME** |
| v. | |
| MULTIPLE ENERGY TECHNOLOGIES, LLC, | |
| Defendant. | |
| | Date:   May 26, 2026<br>Time:   10:00 a.m.<br>Place:   Courtroom 1668<br>255 East Temple Street<br>Los Angeles, California |

On May 26, 2026, after remand by the United States District Court for the Central District of California (the "**District Court**") and in accordance with the Order of the United States Court of Appeals for the Ninth Circuit (the "**Ninth Circuit**"), the Court conducted a hearing on the motion for summary judgment (the "**MSJ**") filed by plaintiff Hologenix, LLC ("**Hologenix**"), in the above-captioned adversary proceeding (the "**Adversary Proceeding**").  Appearances were as noted on the record at the hearing.

The Court having considered the MSJ and the declarations of Todd M. Arnold (the "**Arnold Declaration**") and Dimple Mehra (the "**Mehra Declaration**") in support thereof [AP docket no. 13], the opposition and cross-motion for summary judgment (the "**Cross-MSJ**") filed by defendant Multiple Energy Technologies, LLC ("**MET**") [AP docket no. 22], the declaration of Nicole A. Sullivan in support of the Cross-MSJ (the "**Sullivan Declaration**") [AP docket no. 23], Hologenix's reply in support of the MSJ and in opposition to the Cross-MSJ, and the Declaration of Todd M. Arnold in support thereof [AP docket no. 26], Exhibit A and Exhibit B to the Sullivan Declaration, which were attached to MET's motion for leave to file exhibits under seal and are being treated by the Court as if they had been attached to the Sullivan Declaration [AP docket no. 29], the District Court's *Order Re: Bankruptcy Appeals* and *Judgment* entered on March 29, 2024, in District Court Case No. 2:22-cv-07510-FMO (the "**Reversal Order**"), the Ninth Circuit's *Order* entered on February 2, 2026, in Ninth Circuit Case No. 24-2884 (the "**Ninth Circuit Dismissal Order**"), Hologenix's post-remand brief in support of entry of summary judgment [AP docket no. 104], MET's post-remand brief in opposition to entry of summary judgment [AP docket no. 105], MET's notice of unpublished authorities cited in its post-remand brief [AP docket no. 106], and Hologenix's reply [AP docket no. 107], and having heard and considered the arguments of counsel at the hearings, hereby makes the following findings of fact and conclusions of law:

///

///

///

///

///

1

**I.**

**FINDINGS OF FACT**

1.     In February 2019, MET filed a complaint against Hologenix in the District Court (the "**MET Action**"). [*See* C.D. Cal. Case No. 2:19-cv-01483-PA-RAO.] In April 2019, Hologenix filed an answer to the complaint and a counterclaim against MET. [*Id.*, docket no. 19.]

2.     On **March 6, 2020**, Hologenix and MET entered into a *Confidential Settlement Agreement and General Release* (the "**Settlement Agreement**"). [Complaint, ¶ 9; Answer, ¶ 9 (admitting allegation); Arnold Declaration, Exhibit 3.] There were no parties to the Settlement Agreement other than Hologenix and MET. [Arnold Declaration, Exhibit 3.] The Settlement Agreement resolved any and all claims that Hologenix and MET had or may have had against each other as of March 6, 2020. [*Id.*]

3.     In the Settlement Agreement, Hologenix agreed to pay MET a total of $2.5 million. [Arnold Declaration, Exhibit 3 (Settlement Agreement ¶ 3(a)), and Exhibit 7 (MET's response to RFA 1).] The initial payment, in the amount of $100,000, was to be made within one business day of execution of the Settlement Agreement. [*Id.*]

4.     On **March 9, 2020**, Hologenix made a payment in the amount of $100,000 (the "**Transfer**") by wiring the funds to a client trust account (the "**Trust Account**") maintained by MET's counsel, White and Williams LLP ("**W&W**"). [Answer, ¶¶ 12 and 18; Arnold Declaration, Exhibit 7 (MET's response to RFA 2); Sullivan Declaration, Exhibit B.]

5.     The Transfer was made pursuant to the Settlement Agreement. [Arnold Declaration, Exhibit 7 (MET's responses to RFAs 2, 3, 4, 7 and 8).]

6.     After the payment was made, the balance owed by Hologenix to MET under the Settlement Agreement was $2.4 million. [*See* BK docket no. 358 (order on Hologenix's motion for disallowance of POC 15).]

7.     On **March 12, 2020**, MET entered into a *Litigation Funding Agreement – Repayment and Release* (the "**MET-Legalist Agreement**") with Legalist Fund II, L.P. ("**Legalist**"). [Sullivan Declaration, ¶ 17 (authenticating the MET-Legalist Agreement) and Exhibit A.] A redacted copy of

the MET-Legalist Agreement is Exhibit A to the Sullivan Declaration.  [*Id.*]  There were no parties to the MET-Legalist Agreement other than MET and Legalist.  [Sullivan Declaration, Exhibit A.]

8.      March 12 is six days after March 6 and three days after March 9.  Accordingly, MET and Legalist entered into the MET-Legalist Agreement six days after Hologenix and MET entered into the Settlement Agreement and three days after the Transfer.

9.      The MET-Legalist Agreement provided, in relevant part, as follows:

> Upon receipt of any and all Claim(s) Proceeds, the Counsel will hold any Claim(s) Proceeds received by it or by the Counsel on its behalf in trust for the Funder.  Payment shall be initiated by wire transfer to the Funder . . . within three (3) days of receipt as follows: a) $100,000 – paid immediately.

[Sullivan Declaration, Exhibit A.]  In context, the first reference to "the Counsel" appears to be a typographical error and the first sentence should be read as "Upon receipt of any and all Claim(s) Proceeds, the Plaintiff will hold any Claim(s) Proceeds received by it or by the Counsel on its behalf in trust for the Funder."

10.      On **March 16, 2020**, W&W wired $100,000 from the Trust Account to Legalist. [Sullivan Declaration, ¶ 18 (authenticating Exhibit B), Exhibit B.]

11.      The $100,000 transfer from W&W's Trust Account to Legalist was made pursuant to the MET-Legalist Agreement.  [Sullivan Declaration, ¶ 16.]

12.      March 16 is seven days after March 9 and four days after March 12.  Accordingly, the $100,000 transfer to Legalist occurred seven days after the Transfer and four days after MET and Legalist entered into the MET-Legalist Agreement.

13.      On April 22, 2020 (the "**Petition Date**"), Hologenix filed a petition for relief under chapter 11 of title 11 of the United States Code (the "**Code**"),[1] thereby initiating *In re Hologenix, LLC*, Case No. 2:20-bk-13849-BR (the "**Bankruptcy Case**").  [BK docket no. 1; Arnold Declaration, ¶ 4; Sullivan Declaration, ¶ 3.]

---

[1] Except where otherwise indicated, all references to chapters and sections are to chapters and sections of the Code, 11 U.S.C. §§ 101-1532.

3

14.    Hologenix was insolvent on the Petition Date.  [Arnold Declaration, Exhibit 7 (MET's response to RFA 10).]

15.    Hologenix remains in possession of its property and continues to operate its business as a debtor in possession pursuant to sections 1182 and 1184.

16.    On May 6, 2020, Hologenix filed, among other things, its Schedules of Assets and Liabilities (the "**Schedules**"), a true and correct copy of which is attached as Exhibit "1" to the Arnold Declaration.  [BK docket no. 49; Arnold Declaration, ¶ 5 and Exhibit 1; Sullivan Declaration, ¶ 4.]

17.    On June 2, 2020, Hologenix filed its amended Schedules (the "**Amended Schedules**"), a true and correct copy of which is attached as Exhibit "2" to the Arnold Declaration. [BK docket no. 82; Arnold Declaration, ¶ 6 and Exhibit 2; Sullivan Declaration, ¶ 5.]

18.    According to the Schedules, as amended, as of the Petition Date the debtor owned assets with a total value of $3,903,550.04 and had total liabilities of $7,722,206.27.  [Arnold Declaration, Exhibits 1 and 2.]

19.    On July 8, 2020, MET filed a proof of claim in the Bankruptcy Case, a true and correct copy of which is attached as Exhibit "3" to the Arnold Declaration ("**POC 15**").  [BK claim register 15; Arnold Declaration, ¶ 7 and Exhibit 3; Sullivan Declaration, ¶ 6.]

20.    POC 15 identifies MET as the creditor.  [Arnold Declaration, Exhibit 3.]

21.    POC 15 states that payments should be made to MET.  [Arnold Declaration, Exhibit 3.]

22.    POC 15 states that the basis of MET's claim is "Breach of Settlement Agreement." [Arnold Declaration, Exhibit 3.]  A copy of the Settlement Agreement is attached to POC 15.  [*Id.*]

23.    POC 15 states that no part of MET's claim is secured or entitled to priority under section 507(a).  [Arnold Declaration, Exhibit 3.]  Accordingly, MET is asserting a general unsecured claim.

24.    POC 15 was signed by MET's attorney as "the creditor's attorney or authorized agent."  [Arnold Declaration, Exhibit 3.]

25.    POC 15 does not mention Legalist, or say anything to the effect that MET has any obligation to forward payments from Hologenix to Legalist or any other third party, or say anything

4

to suggest that MET is acting as a conduit with respect to payments to be made by Hologenix to Legalist or any other third party.  [*See* Arnold Declaration, Exhibit 3.]

26.    On April 20, 2022, Hologenix initiated this Adversary Proceeding by filing its *Complaint for: (1) Avoidance of Preferential Transfer; (2) Recovery of Avoided Transfer; and (3) Disallowance of Claims* (the "**Complaint**"), a true and correct copy of which was attached as Exhibit "4" to the Arnold Declaration.  [AP docket no. 1; Arnold Declaration, ¶ 8 and Exhibit 4; Sullivan Declaration, ¶ 7.]

27.    On April 21, 2022, MET initiated a separate adversary proceeding by filing a complaint against Northern Trust Company of Delaware, as trustee of the Seth Casden Resulting Trust, and other defendants, a true and correct copy of which was attached as Exhibit "5" to the Arnold Declaration.  [Arnold Declaration, ¶ 9 and Exhibit 5; Sullivan Declaration, ¶ 8.]

28.    On June 6, 2022, MET filed its *Answer and Affirmative Defenses of Defendant Multiple Energy Technologies, LLC to Complaint to Avoid and Recover Preferences* (the "**Answer**"), a true and correct copy of which was attached as Exhibit "6" to the Arnold Declaration.  [Arnold Declaration, ¶ 10 and Exhibit 6; Sullivan Declaration, ¶ 9.]

29.    On August 15, 2022, Hologenix propounded to MET its first set of interrogatories (each a "**ROG**" and collectively the "**ROGs**"), its first set of requests for admissions (each a "**RFA**" and collectively the "**RFAs**"), and its first set of requests for production (each a "**RFP**" and collectively the "**RFPs**").  [Arnold Declaration, ¶ 11; Sullivan Declaration, ¶ 10.]  The ROGs, RFAs and RFPs are collectively referred to herein as the "**Discovery Requests**."

30.    On September 14, 2022, MET served its *Notice of Responses and Objections to Plaintiff Hologenix LLC's First Set of Interrogatories, Requests for Production, and Requests for Admission* (the "**Discovery Responses**"), a true and correct copy of which is attached as Exhibit "7" to the Arnold Declaration.  [Arnold Declaration, ¶ 13 and Exhibit 7; Sullivan Declaration, ¶ 11.]  In the Discovery Responses, MET quoted and responded to each Discovery Request.  [*Id.*]

31.    In the Discovery Responses, MET said over a dozen times that, "Subject to and without waiver of [or waiving] the foregoing, MET will include in the Document Production the non-privileged documents, if any, that are responsive to this Request."  [Arnold Declaration, Exhibit 7

5

(responses to RFPs 1 through 16); Sullivan Declaration, ¶ 12.]  However, MET never produced any documents in response to any of the RFPs.  [Arnold Declaration, ¶ 11.]

32.     In the Discovery Responses, MET stated that the $100,000 received by MET from Hologenix pursuant to the Settlement Agreement "was almost immediately transferred to a third-party transferee." [Arnold Declaration, Exhibit 7 (MET's responses to RFAs 2, 3, 4, 7 and 8).]  MET did _not_ disclose or allege (a) the existence of the MET-Legalist Agreement or any other agreement pursuant to which MET purportedly was required to transfer $100,000 to Legalist or any other third party, (b) the date of any such transfer, or (c) the identity of any such transferee.  [Arnold Declaration, Exhibit 7.]

33.     According to a liquidation analysis prepared by Hologenix's accountants, as of the Petition Date, the estimated distribution to general unsecured creditors if Hologenix's case was a chapter 7 case would be no greater than 1.8%.  [Mehra Declaration, ¶ 4, Exhibit 8.]  According to a liquidation analysis attached to Hologenix's proposed plan filed on June 21, 2022, as of October 1, 2022, the estimated distribution to general unsecured creditors if Hologenix's case was a chapter 7 case would be no greater than 4.4%.  [Sullivan Declaration, Exhibit C.]

34.     On October 11, 2022, Hologenix filed the MSJ.  [AP docket no. 13.]  The Arnold Declaration and the Mehra Declaration were appended thereto.  [_Id._]

35.     On November 1, 2022, MET filed the Cross-MSJ and the Sullivan Declaration.  [AP docket nos. 22-23.]

36.     On November 8, 2022, Hologenix filed its (a) reply to MET's opposition to the MSJ and (b) opposition to MET's cross-motion for summary judgment. [AP docket no. 26.]  A declaration of Todd M. Arnold was appended thereto.  [_Id._]

37.     On November 22, 2022, MET filed a motion for leave to file exhibits to the Sullivan Declaration under seal.  [AP docket no. 29.]  Exhibits A and B to the Declaration of Nicole Sullivan appended thereto consisted of Exhibits A and B to the prior Sullivan Declaration.  The Court denied MET's motion.  [AP docket no. 30.]

38.     On December 7, 2022, the Court entered findings of fact, conclusions of law, and an order granting the MSJ and denying the Cross-MSJ.  [AP docket no. 34.]  The Court also entered a

6

judgment awarding a money judgment in favor of Hologenix against MET in the amount of $100,000, plus post-judgment interest.  [AP docket no. 33.]

39.    On December 27, 2022, MET filed a notice of appeal and elected to have its appeal heard by the District Court.  [AP docket no. 36.]

40.    On January 24, 2023, MET filed a motion for a stay pending appeal.  [AP docket no. 56.]  According to that motion, on or about January 3, 2023, MET had paid Hologenix $100,165.25 to satisfy the judgment.  In response to the motion, Hologenix reported that it had received a wire in that amount from an entity called "Hollow Tree LLC."  [AP docket no. 64 (declaration of Seth Casden, ¶ 46).]  The Court denied MET's motion for a stay pending appeal.  [AP docket no. 71.]

41.    On March 29, 2024, the District Court entered the Reversal Order, reversing this Court's prior judgment and remanding the matter to this Court.  [District Court docket no. 97.]

42.    On April 30, 2024, Hologenix filed a notice of appeal, appealing the Reversal Order to the Ninth Circuit.  [District Court docket no. 101.]

43.    On June 18, 2024, MET filed a motion for an order requiring Hologenix to return to MET the $100,165.25 previously paid by or on behalf of MET, or to deposit that sum with the Court. [AP docket no. 76.]  On September 12, 2024, the Court granted the motion by ordering Hologenix to deposit $100,165.25, plus interest, with the Clerk of the Court.  [AP docket no. 99.]  On September 18, 2024, Hologenix deposited the sum of $108,214.41 (including any accrued interest, the "**Deposited Funds**") with the Clerk of the Court.  [AP docket no. 101.]

44.    On February 2, 2026, the Ninth Circuit entered the Ninth Circuit Dismissal Order, dismissing Hologenix's appeal of the Reversal Order.  [Ninth Circuit case no. 24-2884, docket no. 54.]  The Ninth Circuit Dismissal Order stated, in relevant part:

> [T]he district court's denial of the bankruptcy court's summary judgment order avoiding a preferential transfer is not final.  The bankruptcy court could still grant summary judgment after giving appropriate weight to the piece of evidence that the district court required the bankruptcy court to consider, or the bankruptcy court could decline to grant summary judgment, leaving the parties with unsettled obligations and rights until the end of the trial.

45.     In March and April 2026, Hologenix and MET filed briefs with respect to Hologenix's request that the Court again grant the MSJ after giving appropriate weight to evidence that the District Court required this Court to consider.  [AP docket nos. 104-107.]

46.     On May 26, 2026, the Court conducted a hearing on Hologenix's renewed request for entry of summary judgment.  Having considered the MSJ, the Cross-MSJ, and all briefs and evidence submitted by the parties in connection therewith, and giving appropriate weight to the statements made in the Sullivan Declaration and all exhibits thereto, based upon these findings of fact and conclusions of law, the Court concluded that clearly the Transfer is an avoidable preference under section 547 and MET's alleged "mere conduit" defense under section 550 lacks any merit, and granted Hologenix's request for entry of summary judgment.

47.     To the extent that any of the Conclusions of Law set forth below constitutes a Finding of Fact, the same is hereby incorporated by this reference.

## II.

## CONCLUSIONS OF LAW

48.     To the extent that any of the forgoing Findings of Fact constitutes a Conclusion of Law, the same is hereby incorporated herein by this reference.

**A.     Jurisdiction, Authority, Venue and Standing**

49.     This Court has jurisdiction over this Adversary Proceeding, and authority to hear and determine this Adversary Proceeding and enter appropriate orders and judgments, pursuant to 28 U.S.C. §§ 151, 157(b), and 1334.  [*See also* Complaint ¶ 1; Answer ¶ 1 (admitting allegation).] Hologenix and MET consent to this Court's entry of final orders and judgments in this Adversary Proceeding.  [Complaint ¶ 5; Answer ¶ 5.]

50.     This Adversary Proceeding is a core proceeding.  28 U.S.C. § 157(b)(2)(A), (B), (C), (F) and (O).  [*See also* Complaint ¶ 4; Answer ¶ 4 (admitting allegation).]

51.     This Adversary Proceeding is brought by Hologenix pursuant to Rule 7001, *et seq.*, of the Federal Rules of Bankruptcy Procedure, sections 502, 547 and 550, and local rules and orders

of the District Court governing the reference and conduct of proceedings arising under or related to cases under the Code, including General Order No. 13-05, entered July 1, 2013. [*See also* Complaint ¶ 2; Answer ¶ 2 (admitting allegation).]

52. Venue in this Court is proper because the Adversary Proceeding arises in and relates to a case under the Code that is pending in this district. 28 U.S.C. § 1409(a). [*See also* Complaint ¶ 3; Answer ¶ 3 (admitting allegation).]

53. As a debtor in possession, and with limited exceptions not applicable in this Adversary Proceeding, Hologenix has all the rights of a trustee serving in a case under chapter 11. 11 U.S.C. § 1107(a).

**B.      Standards for Motions for Summary Judgment**

54. Rule 56 of the Federal Rules of Civil Procedure applies in bankruptcy adversary proceedings. Fed. R. Bankr. P. 7056.

55. If a moving party shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law, the court must grant summary judgment. Fed. R. Civ. P. 56(a).

56. A declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(b)(4). If a party fails to properly support an assertion of fact or properly address another party's assertion of fact, the court may, among other things, consider a fact undisputed for purposes of the motion, or grant summary judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

57. The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[T]he requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248 (emphasis in original). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* A party opposing the motion must set forth specific facts showing that there is a genuine issue for trial. *Id.* There is no issue for trial unless

9

there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. Further, where the only disputes relate to the legal significance of undisputed facts, "the controversy collapses into a question of law suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

58. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, when opposing a motion for summary judgment, the plaintiff provided a version of events that was clearly contradicted by videotape evidence of what happened. *Id.* at 378. The Supreme Court wrote that the plaintiff's version of events was sufficiently discredited by the record that no reasonable jury could have believed him. *Id.* at 380. After applying the indisputable facts to the applicable law, the Supreme Court ruled that the defendant was entitled to summary judgment. *Id.* at 386.

59. Similarly, bare assertions of a legal conclusion, not supported by any other specific facts showing that there is a genuine issue for trial, is not enough. *See Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 820 n.4 (9th Cir. 2007). When a non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993); *U.S. v. 1 Parcel of Real Prop., Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 492 n.3 (9th Cir. 1990). For example, in *Gajiu v. Ehrenberg* (*In re Goldshtadt*), 2019 WL 4200802 (9th Cir. BAP Sept. 4, 2019), a trustee sought a determination that certain real property was community property and therefore property of the bankruptcy estate. In an attempt to defeat the claim, a defendant stated in a declaration that her mother provided funds for the property as a "separate property gift." The bankruptcy court and the BAP ruled that this legal conclusion, unsupported by specific facts, did not raise a genuine issue of material fact. *Goldshtadt*, at *6.

10

60.    The Sullivan Declaration was not signed by Ms. Sullivan, and MET has never filed a copy of the Sullivan Declaration signed by Ms. Sullivan.  For this reason alone, MET has failed to submit any evidence establishing a genuine dispute as to any material fact.

61.    Except where expressly noted otherwise (such as in the immediately preceding paragraph), for purposes of these Findings of Fact and Conclusions and Law, the Court treats the Sullivan Declaration as if it has been signed by Ms. Sullivan and a signed version of the Sullivan Declaration has been filed with the Court.  Even then, giving the statements in the Sullivan Declaration appropriate weight in accordance with Supreme Court and Ninth Circuit law, MET has failed to submit evidence establishing a ***genuine*** dispute as to any material fact.

**C.**    **Hologenix Is Entitled to Avoid the Transfer under 11 U.S.C. § 547(b)**

62.    Subject to certain defenses, a trustee may avoid any transfer of an interest of the debtor in property (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debt owed by the debtor before such transfer was made, (3) made while the debtor was insolvent, (4) made to a non-insider on or within 90 days before the date of the filing of the petition, and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7, (B) the transfer had not been made, and (C) such creditor received payment of such debt to the extent provided by the provisions of the Code.  11 U.S.C. § 547(b).

63.    The Transfer was a transfer of an interest of Hologenix in property.

64.    The Transfer was made to or for the benefit of MET.  Among other things, MET admitted without qualification "that MET received a payment of $100,000.00 on or about March 9, 2020."  [Arnold Declaration, Exhibit 7 (MET's response to ROG 2).]  Further, MET repeatedly admitted "that MET [as opposed to MET's counsel or Legalist] received [the Transfer] via wire."  [Arnold Declaration, Exhibit 7 (MET's responses to RFAs 2, 3, 4, 7 and 8).]  Further, POC 15 acknowledges that MET is the creditor to which Hologenix is indebted under the Settlement Agreement.  [Arnold Declaration, Exhibit 3.]  Further, the plain language of the Settlement Agreement reflects that Hologenix was obligated to make payments to MET, and the Transfer was made pursuant to the Settlement Agreement.  [Arnold Declaration, Exhibits 3 (Settlement

Agreement) and 7 (MET's responses to RFAs 2, 3, 4, 7 and 8)].  Further, the payment by Hologenix to MET reduced Hologenix's debt from $2.5 million to $2.4 million.  Further, even if the Transfer constituted a transfer by Hologenix to Legalist, it was made for the benefit of MET because, among other things, it partially satisfied Hologenix's debt to MET and also satisfied MET's obligation to pay Legalist $100,000 pursuant to the MET-Legalist Agreement.

65.     Relevant to this Adversary Proceeding, "creditor" means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A).  Relevant to this Adversary Proceeding, "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A). The commencement of Hologenix's bankruptcy case on the Petition Date constituted an order for relief under chapter 11.  *See* 11 U.S.C. § 301.

66.     By virtue of the Settlement Agreement, at the time the Transfer was made, MET was a creditor by virtue of its claim against Hologenix in the amount of $2.5 million.  Also, MET has admitted that it was a creditor of Hologenix when the Transfer was made.  [Arnold Declaration, Exhibit 7 (MET's response to RFA 8).]  Accordingly, the Transfer was made to or for the benefit of a creditor.

67.     For purposes of the Code, "debt" means "liability on a claim."  11 U.S.C. § 101(12).

68.     The term "antecedent" is not defined in the Code.  The dictionary definition of "antecedent" is "a preceding event, condition or cause."  "Antecedent," *Merriam-Webster.com Dictionary*,  Merriam-Webster,  https://www.merriam-webster.com/dictionary/antecedent  (visited June 22, 2026).  In the context of section 547, an antecedent debt is one owed before the transfer is made. 5 Collier on Bankruptcy ¶ 547.03[4] (Richard Levin & Henry J. Sommer eds., 16th ed.); *see also Danning v. Bozek* (*In re Bullion Reserve of N. Am.*), 836 F.2d 1214, 1219 (9th Cir. 1988) (subsequent transfer of property to pay existing debt was on account of an antecedent debt).

69.     Hologenix's debt to MET existed before the Transfer was made.  The Transfer was made to partially satisfy Hologenix's debt to MET under the Settlement Agreement.  Accordingly,

the Transfer was made for or on account of an antecedent debt owed by Hologenix before the Transfer was made.

70.     For purposes of section 547, a debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.  11 U.S.C. § 547(f).  The Transfer was made 44 days before the Petition Date.  Therefore, Hologenix is presumed to have been insolvent when the Transfer was made.  Moreover, MET admitted that Hologenix was insolvent on and during the 90 days immediately preceding the Petition Date.  [Arnold Declaration, Exhibit 7 (MET's response to RFA 12).]  Further, in connection with other litigation, MET alleged that Hologenix was insolvent on February 24, 2020, which was just eleven days before the Transfer.  [Arnold Declaration, Exhibit 5 (MET's complaint in separate adversary proceeding, ¶¶ 58, 100 and 104(a)).]

71.     The Transfer was made 44 days before the Petition Date.  Accordingly, the Transfer was made on or within 90 days before the date of the filing of Hologenix's petition.

72.     For purposes of section 547(b)(5), when placing a liquidation value on a debtor's assets, courts assume the hypothetical distribution will occur on the petition date.  *Imagine Fulfillment Svcs., LLC v. DC Media Cap., LLC* (*In re Imagine Fulfillment Svcs., LLC*), 489 B.R. 136, 151 (Bankr. C.D. Cal. 2013).  Unless general unsecured claims will be paid in full in a chapter 7, a prepetition payment on account of a general unsecured claim enables the creditor to receive more than it would receive in a chapter 7 liquidation had the payment not been made.  *Id.* ("[A]ny payment to a general unsecured creditor during the 90–day preference window would be preferential, because in a hypothetical chapter 7, the unsecured creditor would have only received its chapter 7 distribution."); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir. 1985) ("[A]s long as the distribution in bankruptcy is less than one-hundred percent, *any* payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." (emphasis in original)); *In re Powerine Oil Co.*, 59 F.3d 969, 972 (9th Cir. 1995) (same).

73.     Based upon, among other things, MET's admission that Hologenix was insolvent on the Petition Date [Arnold Declaration, Exhibit 7 (MET's response to RFA 10)], the Schedules

13

[Arnold Declaration, Exhibits 1 and 2], MET's own allegation in other litigation that prepetition transfers to others allowed them to receive more than they would receive if this case were a chapter 7 case [Arnold Declaration, Exhibit 5 (MET's complaint in separate adversary proceeding, ¶¶ 72, 101 and 128], Hologenix's liquidation analysis as of the Petition Date [Mehra Declaration, ¶ 4, Exhibit 8], and Hologenix's liquidation analysis as of October 1, 2022 [Sullivan Declaration, Exhibit C], general unsecured creditors would not be paid in full in a chapter 7 liquidation.  Accordingly, as a matter of law, because MET holds a general unsecured claim against the estate, the Transfer allowed MET to receive more than it would receive if this case were a case under chapter 7, the Transfer had not been made, and MET received payment of its debt to the extent provided by the provisions of the Code.

74.     For the foregoing reasons, Hologenix has satisfied its burden to prove the avoidability of the Transfer under section 547(b).  *See* 11 U.S.C. § 547(g).

**D.     <u>MET Is Not Entitled to a Defense under 11 U.S.C. § 547(c)(1)</u>**

75.     In the Cross-MSJ [AP docket no. 22] and its brief after remand [AP docket no. 105], the only defense asserted by MET under section 547(c) is a "contemporaneous exchange for new value" defense under section 547(c)(1).

76.     A trustee may not avoid a transfer under section 547 to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor, and (B) in fact a substantially contemporaneous exchange.  11 U.S.C. § 547(c)(1).

77.     According to MET, "[b]y executing the Settlement Agreement and accepting the [Transfer], MET provided [Hologenix] with the immediate release of its claims in the [MET Action] and the lifting of any associated litigation risks."  Thus, according to MET, it is entitled to a full defense under section 547(c)(1).  MET's argument lacks merit.

78.     In support of its argument, citing section 547(c), MET contends that the term "new value" is "defined broadly to include money, goods, services, or a release of property interests." [Brief (docket no. 105), 17:18-19.]  According to MET, because it released claims against Hologenix

14

when it entered into the Settlement Agreement and "accept[ed]" the Transfer, it gave new value to Hologenix in exchange for the Transfer.  However, (a) "new value" is defined in section 547(a), not section 547(c), and (b) MET's assertion that the statutory definition broadly includes any release of a property interest is contrary to the plain language of the statute.

79.    For purposes of section 547, "new value" means "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation."  11 U.S.C. § 547(a)(2).

80.    A release of claims is not "new value" as that term is defined in section 547(a)(2). Indeed, if a release of claims constitutes "new value," since a debtor's payment of funds to a creditor on account of an antecedent debt necessarily involves a release of liability to the extent the liability is satisfied by the payment, virtually every payment of funds by a debtor to a creditor would qualify for a "contemporaneous exchange for new value" defense.

81.    There is no evidence that, in exchange for the Transfer, MET gave Hologenix any money, goods, services or new credit, or that MET released any property that had been previously transferred to MET.  There also is no evidence that the Transfer was intended by Hologenix and MET to be an exchange (much less a contemporaneous exchange) for such new value.

82.    For the foregoing reasons, MET has failed to satisfy its burden to provide the non-avoidability of the Transfer under section 547(c)(1).  *See* 11 U.S.C. § 547(g).

**E.**    **Hologenix Is Entitled to Recover the Transfer, or the Value Thereof, from MET under 11 U.S.C. § 550**

83.    With limited exceptions not applicable in this Adversary Proceeding, to the extent a transfer is avoided under section 547, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from the initial transferee of such transfer **_or_** the entity for whose benefit such transfer was made.  11 U.S.C. § 550(a)(1).  The word "or" is not exclusive.  11 U.S.C. § 102(5).  Section 550(a)(1) imposes strict liability on both

15

the initial transferee and any other beneficiaries of the avoided transfer. *Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc.* (*In re Walldesign, Inc.*), 872 F.3d 954, 965 (9th Cir. 2017).

84. The Code does not define the term "initial transferee." The general rule is that the party who receives a transfer from the debtor is the initial transferee. *Universal Serv. Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors of Incomnet Commc'ns Corp.* (*In re Incomnet, Inc.*), 463 F.3d 1064 (9th Cir. 2006).

85. In the Ninth Circuit, the test for determining whether a recipient is a transferee is the "dominion" test – i.e., whether the recipient had the ability to use the property for its own purposes. *See id.* at 1069-70. The focus is on whether the recipient had legal authority over the money transferred and the right to use it however it wished. *Id.* at 1070. Applying the dominion test in *Incomnet*, the Ninth Circuit concluded that Universal Service Administrative Company (USAC) was an initial transferee because USAC was neither an agent nor a mere conduit for some other party. *Id.* at 1073. As evidence of this, the court pointed out that USAC had filed a proof of claim in the case, asserting a claim on its own behalf for additional charges owed by the debtor to USAC. *Id.* The court also emphasized that "USAC received the funds from Incomnet without any restrictions *from Incomnet* on their use." *Id.* at 1075 (emphasis in original).

86. Courts have long held that in a two-step transaction in which Party A pays Party C, but the funds flow through an intermediary (Party B), Party C is the "initial transferee" (and thus liable under § 550(a)(1)) while Party B is a "mere conduit" (and thus not liable). This rule exists because automatically treating anyone who touches the money as a "transferee" would lead to absurd results. *See Walldesign*, 872 F.3d at 962. As stated by the Seventh Circuit in *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890 (7th Cir. 1988), "When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded." *Bonded*, 838 F.2d at 893.

87. MET argues that it was not the initial transferee of the Transfer, and that it was a "mere conduit" of a transfer from Hologenix to Legalist. However, MET submits no evidence that there was any agreement by Hologenix to pay Legalist, or that there was any agreement between Hologenix and MET (or MET's attorneys) contemplating MET's transfer of funds to Legalist, or that Hologenix instructed MET or its counsel to use the funds to pay Legalist, or that Hologenix was

16

aware that MET would be entering into the MET-Legalist Agreement with Legalist, or that Hologenix was even aware of MET's relationship with Legalist, or that MET received the Transfer with restrictions from Hologenix on MET's use of the funds.  To the contrary, Hologenix and MET had a Settlement Agreement under which Hologenix was required to pay MET, and MET admits that the Transfer was made pursuant to the Settlement Agreement.  [Arnold Declaration, Exhibit 7 (MET's responses to RFAs 2, 3, 4, 7 and 8).]  And like USAC in *Incomnet*, MET filed POC 15 asserting a claim on its own behalf for amounts owed by Hologenix under the Settlement Agreement. [Arnold Declaration, Exhibit 3.]

88.    In the Sullivan Declaration, Ms. Sullivan states that "MET never had any control or dominion over the $100,000 that White and Williams LLP received from Hologenix, LLC pursuant to the parties' settlement agreement." [Sullivan Declaration, ¶ 19.]  In this Court's view, because the "control test" and the "dominion test" are legal tests applied by courts in the context of section 550(a), Ms. Sullivan's testimony is a legal opinion of counsel.  Bare assertions of a legal conclusion, not supported by any other specific facts showing that there is a genuine issue for trial, is not enough. *See Bader*, 503 F.3d at 820 n.4.

89.    Even if Ms. Sullivan's statement is accepted as testimony by a percipient witness, no reasonable jury could conclude that MET never had control or dominion over the $100,000.  MET's own evidence shows that MET had and exercised dominion over the $100,000 by, among other things, (a) entering into the MET-Legalist Agreement three days after the Transfer, in which MET agreed to transfer $100,000 to Legalist, and (b) causing $100,000 to be transferred to Legalist four days later pursuant to the MET-Legalist Agreement.  And even if the MET-Legalist Agreement stripped MET of "control or dominion" over the funds, the MET-Legalist Agreement did not exist until at least three days after the Transfer.

90.    The fact that the funds may have been wired by Hologenix into W&W's Trust Account does raise any genuine dispute of material fact.  Generally, an attorney has authority to receive money claimed by the attorney's client. *See* Cal. Code Civ. Proc. § 283; *Skelly v. Richman*, 10 Cal.App.3d 844, 863 (1970) (proper for judgment debtor to pay judgment creditor's attorney instead of judgment creditor or the judgment creditor and attorney jointly).  W&W represented

MET's attorney in the MET Action.  Particularly in light of the undisputed evidence, including evidence submitted by MET, no reasonable jury could conclude that W&W was acting in any capacity other than as an agent for MET when the Transfer was made into W&W's Trust Account.

91.    MET argues that the $100,000 received from Hologenix was "immediately" transferred to Legalist, and that the alleged immediacy of the second transfer supports MET's "mere conduit" defense.  However, based on MET's own evidence, no reasonable jury could conclude that the transfer to Legalist occurred immediately after the Transfer.

92.    In the Discovery Responses, MET stated that it received the Transfer on or about March 9, 2020, "and the payment was almost immediately transferred to a third-party transferee." [Arnold Declaration, Exhibit 7 (response to ROG 1).]  Noticeably, MET did not identify the date of the transfer to the third-party transferee.  Also, MET did not produce any documents regarding the alleged transfer, despite representations in the Discovery Responses that responsive documents would be produced.  Thus, MET identified no facts that would support the conclusory statement in the Discovery Responses that the transfer to Legalist occurred "almost immediately" after the Transfer.

93.    In the Sullivan Declaration, Ms. Sullivan testified that "screenshots of the wire transfer showing the receipt of payment in the amount of $100,000 by White and Williams LLP from the Debtor, and the immediate transfer to Legalist of the same is attached hereto as Exhibit B." [Sullivan Declaration, ¶ 18.]  Ms. Sullivan technically did not testify of her own personal knowledge that $100,000 was received from Hologenix on March 9, 2020, or that $100,000 was transferred to Legalist on March 16, 2020; she only authenticated and testified as to the purported content of Exhibit B.  An original writing is required to prove the content of the writing, though in some circumstances a duplicate of the writing is admissible.  Fed. R. Evid. 1002-1003.  Here, Ms. Sullivan attached as Exhibit B a document that she identified as a screenshot of the wire transfers.

94.    To the extent Ms. Sullivan testified of her own personal knowledge that the transfer to Legalist occurred "immediate[ly]" after the Transfer, Ms. Sullivan's testimony is inconsistent with MET's own Discovery Responses.  In any event, no reasonable jury could conclude that the $100,000 transfer from W&W's Trust Account to Legalist occurred immediately (or almost immediately) after

18

the Transfer.  The evidence submitted by MET conclusively shows that the Transfer of $100,000 from Hologenix into the Trust Account occurred on March 9, 2020, and the transfer of $100,000 from the Trust Account to Legalist occurred on March 16, 2020 – a full week after the Transfer was made, not immediately.

95.    If MET is not the "initial transferee" of the Transfer, MET is still an entity for whose benefit the Transfer was made.  Among other things, the Transfer was a partial payment of Hologenix's debt to MET and MET realized a $100,000 benefit, acknowledged by the reduction of MET's claim from $2.5 million to $2.4 million.  Further, because MET used the $100,000, or directed that the $100,000 be used, to pay Legalist pursuant to the MET-Legalist Agreement, the transfer satisfied MET's obligation to Legalist.

96.    MET argues that it did not actually benefit from the Transfer.  Even if MET submitted evidence to that effect, no reasonable jury could conclude that MET did not benefit from the Transfer for the reasons stated above.  Further, in this regard, *Merrill v. Dietz* (*In re Universal Clearing House Co.*), 62 B.R. 118 (D. Utah 1986), is instructive.  In that case, the debtor wrote a $10,000 check to an attorney (Ayervais) with the notation "for Thomas Dietz."  When the transfer was avoided, the court found that Dietz was an entity for whose benefit the transfer was made, and therefore was liable under section 550(a)(1). *Universal Clearing*, 62 B.R. at 127.  In response to Dietz's argument that he did not ultimately benefit from the services rendered by the attorney, the court noted that section 550(a)(1) requires that the transfer have been made for the benefit of the entity from which the trustee seeks recovery, but does not require that the entity actually receive the benefit.  *Id.*; *see also Bullion Reserve*, 922 F.2d at 547 ("courts have found that an entity need not actually benefit, so long as the transfer was *made* for his benefit" (emphasis in original)).

97.    In sum, MET is the initial transferee of the Transfer or an entity for whose benefit the Transfer was made.  Either way, MET is strictly liable under section 550(a)(1).  MET's assertion that it was a "mere conduit" is totally without merit.

19

**F.      Hologenix Is Entitled to Disallowance of MET's Claim Against the Estate Unless and Until MET Satisfies the Judgment**

98.      The Court must disallow any claim of any entity from which property is recoverable under section 550 or that is a transferee of a transfer avoidable under section 547, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 550.  11 U.S.C. § 502(d).

99.      Pursuant to section 502(d), Hologenix is entitled to a judgment determining that POC 15 is disallowed unless and until the Deposited Funds (or other funds in like amount) are paid to Hologenix.

100.      In January 2023, MET paid, or caused to be paid, the judgment originally entered in this Adversary Proceeding.  In September 2024, pursuant to the Court's order, Hologenix returned the payment by depositing the funds, with interest, with the Clerk of the Court.

**G.      MET's Request for a Temporary Stay Pending Appeal Is Granted**

101.      Ordinarily, a party must move first in the bankruptcy court for a stay of the bankruptcy court's judgment, order, or decree pending appeal.  Fed. R. Bankr. P. 8007(a)(1).

102.      When deciding whether to issue a discretionary stay pending a bankruptcy appeal, courts consider the following four factors:  (1) whether the movant has made a strong showing that it is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *In re Gardens Reg'l Hosp. and Med. Ctr., Inc.*, 567 B.R. 820, 830 (Bankr. C.D. Cal. 2017).  The party requesting a stay bears the burden of showing that the circumstances justify an exercise of the court's discretion to issue a stay.  *Id.*  The movant must make a "minimum permissible showing" with respect to each factor.  *Id.* (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011)).  The first two factors are the most critical.  *Id.*  The chance of success must be better than negligible, and simply showing some possibility of irreparable injury does not satisfy the second factor.  *Id.*  If the moving party meets the minimum threshold as to

20

each factor, the court may then "balance the various stay factors once they are established." *Id.* (quoting *Leiva-Perez*, 640 F.3d at 965).

103.    At the hearing, MET orally requested that the Court issue a stay of the judgment pending appeal.  The Court heard and considered MET's oral request.

104.    In the Court's view, considering and giving appropriate weight to all evidence submitted to the Court (including the Sullivan Declaration and its exhibits), the Transfer clearly is a classic preference avoidable under section 547(b), MET clearly did not provide "new value" in exchange for the Transfer and therefore is not entitled to a defense under section 547(c)(1), and MET was the initial transferee of the Transfer or at the very least was an entity for whose benefit the Transfer was made.  Thus, the Court believes that MET has not made a strong showing that it is likely to succeed on the merits of its appeal.

105.    Nevertheless, the Court will issue a temporary stay of the judgment to provide MET an opportunity to seek a stay pending appeal from the District Court without troubling the District Court and the parties with an emergency motion for a stay.  While the stay remains in effect, (1) the Deposited Funds will remain on deposit with the Clerk of the Court, and (2) POC 15 will not be deemed disallowed pursuant to section 502(d).

106.    If MET does not file a timely notice of appeal, the stay will expire automatically upon expiration of the time to appeal.  In that event, Hologenix may lodge a proposed order directing the Clerk of the Court to disburse the Deposited Funds to Hologenix.

107.    If MET files a timely notice of appeal and the District Court denies MET's motion for a stay pending appeal, the stay will expire automatically upon entry of the District Court's order denying MET's motion.  In that event, Hologenix may lodge a proposed order directing the Clerk of the Court to disburse the Deposited Funds to Hologenix.

**H.      Conclusion**

108.    Based on the foregoing, there is no genuine dispute as to any material fact and Hologenix is entitled to judgment as a matter of law on (1) Hologenix's first claim for relief, to avoid the Transfer pursuant to section 547, (2) Hologenix's second claim for relief, to recover the Transfer,

or the value thereof, from MET pursuant to section 550, (3) Hologenix's third claim for relief, for disallowance of POC 15 and any and all other claims of MET against Hologenix and its estate unless and until Hologenix receives the Deposited Funds (or other funds in like amount), and (4) each and all of MET's alleged affirmative defenses.

109.    Having determined that Hologenix is entitled to summary judgment on all claims for relief asserted in the Complaint, the Court will issue a separate order granting the MSJ, denying the Cross-MSJ, and ordering the Clerk of the Court to disburse the Deposited Funds to Hologenix.

110.    As set forth above, MET's request for a temporary stay of the judgment is granted, and the Court's order will provide accordingly.

#####

Date: July 13, 2026

_____

Barry Russell
United States Bankruptcy Judge

22